## NATIONAL BANK OF COMMERCE v. TOWN OF GRANADA.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

No. 138.

1. MUNICIPAL CORPORATIONS—BONDS—VALIDITY.

Under Mills' Ann. St. Colo. § 4431, the proper method of procedure in the issuing of town bonds to fund a floating debt, as provided for in section 4541, is by an ordinance of the board of trustees, ordering an election.

2. SAME—PUBLICATION OF ORDINANCE.

Laws Colo. 1887, p. 445, § 1, provides that all town ordinances shall be recorded in a book kept for that purpose, and authenticated by the presiding officer of the board and the clerk, and all by-laws of a general or permanent nature shall be published in some newspaper, and such by-laws and ordinances shall not take effect until the expiration of five days after they are so published, but the book of ordinances provided for in the act shall be prima facie evidence of publication. *Held,* that an ordinance calling an election to authorize the funding of the floating debt of a town, which was passed, but not recorded or published, never went into effect, and that bonds authorized by such an election were void. 48 Fed. Rep. 278, affirmed.

3. SAME—ESTOPPEL.

A recital in such bonds that they are issued under the ordinance does not estop the town from showing that the ordinance was never published, and is therefore void, since neither the mayor nor clerk, who signed the bonds, have any duty in relation to publishing ordinances, or determining when they had been published according to law. 48 Fed. Rep. 278, and 44 Fed. Rep. 262, affirmed. Dixon Co. v. Field, 4 Sup. Ct. Rep. 315, 111 U. S. 83, followed.

In Error to the Circuit Court of the United States for the District of Colorado.

Action by the National Bank of Commerce of Kansas City, Mo., against the town of Granada, state of Colorado, to recover on certain town bonds. The circuit court gave judgment for plaintiff. 41 Fed. Rep. 87. A new trial was thereafter granted, (44 Fed. Rep. 262,) and judgment thereon given for defendant, (48 Fed. Rep. 278.) Plaintiff brings error. Affirmed.

Statement by CALDWELL, Circuit Judge:

This action is founded on interest coupons cut from bonds purporting, on their face, to have been issued by "the city of Granada, in the county of Bent, state of Colorado."

The following is a copy of one of the bonds:

| "$500. | State of Colorado. | $500. |
|---|---|---|
| "Number 9 | City Funding Bond of the City of Granada. | Number 9 |

"The city of Granada, in the county of Bent, state of Colorado, acknowledged itself indebted to the bearer in the sum of five hundred dollars, payable fifteen years after the first day of December, 1887, redeemable after five

years at the pleasure of the city, with interest at the rate of eight per cent-um per annum, payable semiannually on the first day of June and the first day of December, in each year, at the treasury of the city, or at the National Park Bank, New York, on presentation and surrender of the proper coupons hereto attached.

"This bond is issued under an ordinance of the city council of the city of Granada, adopted on the 11th day of November, 1887, to provide for the issuing and paying of bonds of the city of Granada, for the purpose of funding and paying the existing debt of the city of Granada.

"W. H. Cale, Mayor of Granada.<br>"Ed. Walsh, City Clerk.

"Registered:
    "Darwin P. Kinsley,     [Seal.]
        "Auditor of the State of Colorado.
"Recorded:
    "E. S. Wiggins,
        "Treasurer of the City of Granada."

The following is a copy of one of the coupons:

"20.                         $20.                       20.

"The city of Granada, in the county of Bent, in the state of Colorado, will pay the bearer on the first day of December, 1902, at the city treasury or at the National Park Bank, New York, twenty dollars, being six months' interest on bond No. 9.             W. H. Cale, Mayor.
    "Ed. Walsh, City Clerk."

This cause was tried below on an agreed statement of facts, which, in the view the court takes of the case, it is not needful to set out in full.

The town of Granada, styled, by mistake, "City of Granada," in the bonds, on the 4th day of November, 1887, entered into a contract with Thomas Doak, whereby the latter, for the consideration of $36,000, to be presently paid in warrants on the town treasury, undertook to build a water reservoir of the capacity of 1,000 barrels, the water to be obtained from the Arkansas river by means of a ditch, for the purpose of supplying the town with water for domestic and other purposes. This contract contained a stipulation that the town should immediately fund the warrants upon its treasury into bonds bearing 8 per cent. interest, payable semiannually. On November 11, 1887, the board of trustees of the town passed the following ordinance:

"Be it ordained by the mayor and board of trustees of the incorporated town of Granada, Colorado:

"Section 1. That there be submitted to the vote of the qualified electors of the incorporated town of Granada, Colorado, who shall have paid taxes upon property assessed to them in said incorporated town for the last preceding year, the question whether the board of trustees of said incorporated town shall issue bonds of such incorporated town under the provisions of the act of the legislature of the state of Colorado, being an act entitled 'An act to enable the several cities and towns of the state to fund the floating indebtedness in exchange, at par, for the warrants of said incorporated town of Granada, at par, issued prior to the date of the first publication of a notice heretofore published in this behalf, in accordance with a petition heretofore presented to the said board of trustees, signed by fifty of the electors of said incorporated town of Granada during the preceding year. Such question to be submitted at a special election hereafter provided.

"Sec. 2. That the foregoing proposition set out in section one of this ordinance be submitted, as aforesaid, at a special election to be held in the incorporated town of Granada, Colo., at the usual place of holding elections, on the 12th day of December, 1887, between the hours of 1 o'clock P. M. and 4 o'clock P. M. of the same day.

"Sec. 3. That upon the return of the canvass of the vote of said election according to law, if it shall be found that a majority of the electors of said incorporated town of Granada, Colo., who shall have paid taxes on property assessed to them in said town the preceding year, shall have voted in favor of said proposition, and the result of said election be so declared, then, and in that event, the mayor and clerk of said incorporated town of Granada, Colo.,

are hereby authorized and directed to exchange bonds of said incorporated town to the amount of thirty-six thousand dollars, and no more, at par, for and on account of certain warrants in the amount heretofore issued, to one Thomas Doak, in payment for the construction and operation of waterworks within said incorporated town of Granada, as per the ordinance heretofore passed in that behalf, and the said mayor and clerk are hereby authorized and directed, upon the proper surrender and exchange of said warrants, to execute and deliver said bonds.

"Sec. 4. That notice of said election be published according to said law."

It is admitted that this "alleged or supposed ordinance was never recorded in the town ordinance book, never signed by the mayor or attested by the clerk, and was never published in any paper, or in any form or manner whatever."

An election was held on the 12th day of December, 1887, and it was declared that the proposition to fund the floating debt of the town was carried, and thereupon the mayor and clerk of the town, by order of the board of trustees, executed and delivered to Doak $36,000 in bonds in exchange for the $36,000 in town warrants previously issued to him.

The waterworks were never constructed, nor any part thereof. The plaintiff purchased the bonds from which the coupons in the suit were cut, for value, before maturity. The act of the legislature under which the board of trustees acted reads as follows:

"It shall be [the] duty of the city council or board of trustees of any city or town having a floating indebtedness exceeding (10) ten thousand dollars, upon a petition of fifty electors of said city or town, who shall have paid taxes upon property assessed to them in said city or town in the preceding year, to publish for the period of thirty days, in a newspaper published within said city or town, a notice requesting the holders of the warrants of such city or town to submit, in writing, to the city council or board of trustees, within thirty days from the date of the first publication of such notice, a statement of the amount of warrants of such city or town, with accrued interest thereon, which they will exchange at par for the bonds of such city or town, to be issued under the provisions of this act, taking such bonds at par. It shall be the duty of such city council or board of trustees, at the next general election occurring after the expiration of thirty days from the date of the first publication of the notice aforesaid, upon the petition of fifty of the electors of such city or town, who shall have paid taxes upon the property assessed to them in said city or town the preceding year, to submit to the vote of qualified electors of such city or town who shall have paid taxes upon the property assessed to them in said city or town, the preceding year, the question whether the city council or board of trustees shall issue bonds of such city or town, under the provisions of this act, in exchange, at par, for warrants of such city or town, at par, issued prior to the date of the first publication of the aforesaid notice, or they may submit such question at a special election, which they are hereby empowered to call for that purpose, at any time after the expiration of the thirty days from the date of the first publication of the notice aforementioned, on the petition of fifty qualified electors as aforesaid; and they shall publish, for the period of at least thirty days immediately preceding such general or special election, in some newspaper published in such city or town, a notice that such question will be submitted to the duly-qualified electors, as aforesaid, at such election. The treasurer of the county in which such city or town is located shall make out and cause to be delivered to the judges of election of each election precinct, prior to said election, a certified list of the taxpayers of such city or town, who shall have paid taxes upon property assessed to them in the preceding year, and no person shall vote upon the question of funding the city or town indebtedness unless his name shall appear upon such certified list, nor unless he shall have paid all city or town taxes assessed against him in such city or town the preceding year. If a majority of the votes lawfully cast upon the question of such funding of the city or town indebtedness shall be for funding of such indebtedness, the city council or board of trustees may issue to any person or corporations holding any city or town warrant or warrants issued prior to the date of the first publication of the aforementioned notice coupon

bonds of such city or town in exchange therefor, at par. No bonds shall be issued of less denomination than $100, and, if issued for a greater amount, then for some multiple of that sum, and the rate of interest shall not exceed eight per cent. per annum, the interest to be paid semiannually at the office of the city or town treasurer, or in the city of New York, at the option of the holders thereof. Such bonds to be payable at the pleasure of the city or town after five years from the date of their issuance, but absolutely due and payable fifteen years after the date of issue. The whole amount of bonds issued under this act shall not exceed the sum of the city or town indebtedness at the date of the first publication of the aforementioned notice; and the amount shall be determined by the city council or board of trustees, and a certificate made of the same, and made part of the records of the city or town, and any bonds issued in excess of said sum shall be null and void; and all bonds issued under the provisions of this act shall be registered in the office of the state auditor, to whom a fee of ten cents shall be paid for recording each bond." Section 4541, Mills' Ann. St. Colo.

The cause was first tried before Judge Phillips, who gave judgment for the plaintiff upon the grounds stated in his opinion. 41 Fed. Rep. 87. A new trial was granted for reasons stated in his opinion, reported in 44 Fed. Rep. 262. The cause was last tried before Judge Parker, who rendered judgment for the defendant, (48 Fed. Rep. 278,) and the plaintiff sued out this writ of error.

Elijah Robinson, for plaintiff in error.

James B. Belford and Alvin Marsh, for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge, (after stating the facts.) Unwonted haste and great irregularities characterized all the proceedings leading up to the issue of the bonds in suit. The town received no consideration for them; and if they had remained in the hands of Doak, to whom they were originally issued, he could not have recovered upon them. Whether the plaintiff, as a purchaser for value, without notice of the frauds which would avoid the bonds in the hands of Doak, is in any better position, turns upon the question whether the officers of the town, who issued them, had any lawful authority to do so. The act of the legislature is silent as to the mode of carrying into effect the powers conferred by it on the board of trustees.

We think the principal and vital question in this case is whether the powers thus conferred on the board of trustees may be exercised without an ordinance containing the usual and necessary provisions to guide, control, and bind the town and its officers, and the public, in the execution of the funding scheme, and to protect all persons in their rights acquired thereunder. We entertain no doubt but that the appropriate mode for the town to proceed under the act in question is by ordinance of its board of trustees. The proceeding involves the appointment and holding of an election, and the conversion of a nonnegotiable floating debt into the form of negotiable bonds drawing a high rate of interest, payable semiannually, and which must run 5, and may run 15, years. A measure requiring an expression of opinion from the voters of the town, at the ballot box, and involving such large values, and of so much interest to the taxpayers of the town and the holders of its securities, through so many years, ought not to be carried into effect except by the most

solemn and deliberate mode of proceeding known to the law for giving expression to the corporate will. That mode is by ordinance. This is the mode that is prescribed by the statute of Colorado, which declares:

"Municipal corporations shall have power to make and publish, from time to time, ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this act, and such as shall seem necessary and proper to provide for the safety, preserve the health, and promote the prosperity, and improve the morals, order, comfort, and convenience, of such corporation, and the inhabitants thereof." Section 4431, Mills' Ann. St. Colo.

The statutes of the state which authorize the issue of refunding bonds, (Id. § 4548,) the creation of new indebtedness, (Id. § 4403, 6th subd.,) and the appropriation of aid to public libraries, (Id. 76th subd.,) require, in terms, that the same shall be done by ordinances. We think the board of trustees of this town had a correct conception of the proper mode of proceeding when they passed the ordinance in question.

A statute of the state provides:

"All ordinances shall, as soon as may be after their passage, be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council or board of trustees and the clerk; and all by-laws of a general or permanent nature, and those imposing any fine, penalty, or forfeiture, shall be published in some newspaper published within the limits of the corporation, or, if there be none such, then in some newspaper of general circulation in the municipal corporation; and it shall be deemed a sufficient defense to any suit or prosecution for such fine, penalty, or forfeiture to show that no such publication was made: provided, however, that if there is no newspaper published within, or which has no general circulation within, the limits of the corporation, then and in that case, upon a resolution being passed by such council or board of trustees to that effect, such by-laws and ordinances may be published by posting copies thereof in the public places to be designated by the board of trustees, within the limits of the corporation; and such by-laws and ordinances shall not take effect and be in force until the expiration of five days after they have been so published or posted. But the book of ordinances herein provided for shall be taken and considered in all courts of this state as prima facie evidence that such ordinances have been published as provided by law." Section 1, Laws 1887, p. 445.

It is admitted that the ordinance in question was not "recorded in a book kept for that purpose," and was not "authenticated by the signature of the presiding officer of the   *   *   *   board of trustees and the clerk," and "was never published in any paper, or in any form or manner whatever."

It is obvious to our minds that the ordinance in this case was of a "general or permanent nature," and as such could "not take effect and be in force until the expiration of five days" after its publication. It provided for an election, and therefore concerned every legal voter of the town. It affected every taxpayer, whether a voter or not. It affected the creditors of the town, present and future. It involved the making and execution of contracts, and various other matters relating to funding the floating indebtedness of the town. If such an ordinance is not of a "general or permanent nature," it would be extremely difficult to suggest one that is.

The provision of the act that such ordinances shall not take effect

or be in force until they are published in the mode provided by the act is mandatory. This ordinance, never having been published, never went into effect. Not being in force, it conferred no authority on the board of trustees, or any officer of the town, to do any act under it; and no one could acquire any right based on it, or on any act of the officers of the town assuming to act under it. It had no more legal effect than if it had never been passed by the board of trustees. 1 Dill. Mun. Corp. §§ 331–334, and notes.

But the learned counsel for the plaintiff in error contends that the recital in the bonds that they "are issued under an ordinance" of the town relieves the plaintiff from the burden of showing that the ordinance was published, and estops the defendant from showing that it was not.

It has never yet been held that a false recital in a bond can make that a law which never was a law. When an ordinance has been duly enacted, and has taken effect, authorizing the officers of a town to issue its negotiable bonds upon certain precedent requirements or conditions, such as a petition of a given number of taxpayers, or a majority vote or other like conditions, and the officers issuing the bonds are the appointed tribunal to decide whether there has been a compliance with such precedent conditions, and the bonds issued recite that they are issued in pursuance of such ordinance, it is probably true that such recital, in favor of bona fide purchasers for value, would import a full compliance with the requirements of the ordinance, and preclude inquiry as to whether the precedent conditions were performed before the bonds were issued. But that doctrine has no application to this case. Here there was no ordinance in force under which the board of trustees, or any officer of the town, could perform any act. The authority to issue the bonds never attached, on any terms or conditions. The action of the mayor and clerk was not simply irregular, but was without the sanction of any law. The point was never reached at which they could lawfully do any act under the supposed ordinance. It is a case of a total want of authority to do the act upon any conditions, and not a case where the authority to do the act existed, but the conditions precedent to the exercise of the authority were not observed.

The statute which provides that ordinances shall not take effect until they are published is a public statute, of which all persons are bound to take notice. The statute makes the recording of an ordinance in the ordinance book prima facie evidence that it has been published according to law. But this ordinance was not recorded, nor authenticated as an ordinance by the signatures of the mayor and clerk, as required by law. Moreover, it is not shown that the mayor and clerk, or either of them, had any duty or function to perform in relation to publishing ordinances, or determining when they had been published according to law. The determination of this fact, when it becomes material, and is contested, and the ordinance has not been recorded, is, under the statute, a matter for judicial inquiry.

The statute itself provides that it shall be a sufficient defense to any suit or prosecution for a fine, penalty, or forfeiture to show

that the ordinance imposing it was not published as required by the statute, and it is obvious that the same defense must prevail against any civil right grounded upon an ordinance which was never published, no matter by or against whom such right is asserted. The plaintiff was bound to know, independently of the recital in the bond, that there was such an ordinance in existence. This fact once established, it might well assume that the recital was sufficient evidence that the conditions prescribed by the ordinance for issuing the bonds had been complied with. It was as much the right and duty of the plaintiff to determine this question as it was of the clerk and mayor, and the determination of either, in any form, would not bind or conclude the town. It is only when officers are invested by law with the authority to determine or adjudicate upon the fact that their recital operates as an estoppel.

If the recital in this case had stated, in terms, that the ordinance had been duly published, it would not have estopped the town, because neither the mayor nor the clerk, nor both together, are invested with the authority to determine that question, and anything they might say or certify to on the subject, save as witnesses in court, would not be evidence anywhere, or bind any one. "If," says the supreme court, "the officers authorized to issue the bonds upon a condition are not the appointed tribunal to decide the fact which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words, where the validity of bonds depends upon an estoppel claimed to arise upon the recital of the instrument, the question being as to the existence of the power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals, and to make them conclusive. The very ground of the estoppel is that the recitals are the official statements of those to whom the law refers the public for authentic and final information on the subject." Dixon Co. v. Field, 111 U. S. 83, 94, 4 Sup. Ct. Rep. 315; Sutliff v. Lake County Com'rs, (Oct. term, 1892,) 13 Sup. Ct. Rep. 318.

The law does not refer the public to these officers, or to either of them, for information as to the publication of town ordinances; and their statements upon that subject have no more significance or binding force than those of any other citizen of the town.

The view taken of the question renders it unnecessary to consider other defenses to the bonds set up and relied on by the defendant in error. The judgment of the court below is affirmed.