FOREST et al. v. ST. FRANCIS LEVEE DIST. OF MISSOURI.

(Circuit Court, E. D. Missouri, E. D. October 29, 1896.)

No. 3,931.

1. CORPORATIONS—POWER TO CONTRACT—ACTION ON CONTRACT—DEMURRER.
Although, where a corporation is invested by its charter with power to enter into a contract, on certain antecedent conditions, it is sufficient, in

declaring thereon, to aver the making of a contract, yet, if it be apparent, from the face of the plaintiff's pleading, taken as a whole, that the antecedent conditions were not in fact fulfilled, such pleading will be demurrable.

2. SAME—CORPORATION TO CONSTRUCT LEVEES.

Defendant, a corporation organized out of a portion of the territory of a state, for the purpose of constructing levees to prevent inundation, was authorized to make contracts for constructing such levees. The charter specified the steps to be taken, including a resolution by the board of directors, at its annual meeting, to be held in May; approval by the landowners at an election; advertisement for bids, and award to the lowest bidder; and the taking of a bond to secure the performance of the work. Plaintiffs brought an action, alleging an agreement by defendant to pay for building a levee, and set forth in their petition that, in September, 1896, they made a contract with the United States to build a levee, under which contract they were not required to begin work till the summer of 1895; that, on November 8, 1894, the defendant contracted with them, in consideration of their endeavoring to finish the work before the summer of 1895, to pay them five cents for every cubic yard of earth put into the levee, according to their monthly estimates in their accounts with the United States. *Held*, that it sufficiently appeared, on the face of the petition, that no contract could have been or was made in conformity to the terms of defendant's charter, and that the petition was demurrable.

This was an action upon a contract, and was brought by William M. Forest and Patrick McCadden, trading under the firm name and style of Forest & Co., against the St. Francis Levee District of Missouri, a corporation. The case was heard on demurrer to the amended complaint.

Dodge & Mulvihill, S. S. Merrill, and Geo. S. House, for plaintiffs. R. B. Oliver and Geo. D. Reynolds, for defendant.

PHILIPS, District Judge. This cause has been submitted upon demurrer to the amended petition. The action is predicated of a contract alleged to have been made between the plaintiffs and the defendant. The defendant is a corporation created by special act of the legislature of the state of Missouri. Laws Mo. 1893, p. 200. The controversy involves the authority of the board of directors to make the contract sued on. Generally stated, said act formed into a levee district a certain area of the state, known as a part of the St. Francis Basin, in the counties of Dunklin, New Madrid, and Pemiscot, subject to inundation from the Mississippi river. It named a board of levee directors, declared "to be a body politic and corporate by the name and style of the 'Board of Directors of St. Francis Levee District of Missouri,'" etc. Section 5 declares the powers of the board—

"To levee the St. Francis front in counties herein named in this state, and to protect and maintain the same in such effective condition as honest, able and energetic effort on their part may maintain, by building, repairing, and raising levees on the river bank of the Mississippi river, or such other places as the said board may select. They shall have power to employ all agents necessary to the execution of their duties. They shall determine the base, crown, height, slope and grade of the levee, and make all needful regulations, and do all acts in their opinion necessary to secure the levee district under their charge from overflow by the waters of the Mississippi river."

To execute the given powers, section 6 directs said board—

"To assess and levy annually a tax, not exceeding five per cent. of the increased value or betterment estimated to accrue from protection given against floods from the Mississippi river by said levee, on all lands within said levee district: Provided, that said board of directors shall call a meeting of the land-owners in each of the respective counties within said levee district in each county, by posting notices of the time and place of said several meetings in ten conspicuous places in each county, ten days before the day fixed for the meeting, at which time the proposition to levy said annual assessments shall be submitted to said land owners; and if a two-thirds majority of the land-owners in such levee district, who appear at such meeting, shall vote for such assessment, it shall then be the duty of said board of directors to levy annually said tax. Said meetings shall be held by the directors in each county, who shall appoint two clerks of election; the said directors and said clerks shall perform their respective duties under oath, to hold the elections fairly, and to make returns of the election fairly to the secretary of said levee board, who shall, with the president and treasurer of said board, proceed to canvass the returns and declare the result; and if it shall appear from the returns that two-thirds of the land-owners represented at said meeting voted for said annual assessment, then the said president of said board shall give notice of the fact throughout the said levee district, and the tax shall be levied as hereinafter provided, and the annual levy, not to exceed five per cent., shall continue no longer than is found to be necessary to accomplish the objects of this act, and when no longer needed, the president shall notify the assessor and direct him not to assess for this purpose."

The act then provides the mode of assessment on the lands of the levee district, and for collection of the taxes to meet these betterments, and declares such burdens to be a lien on said lands. It also provides for an engineer to make surveys and exercise supervision of all work done under contracts. Section 22 declares that:

"If at any regular annual meeting of said board of levee directors they shall decide to do any certain amount of work that year, and if the assessment upon betterments accruing to the lands in said levee district to pay for said work be approved by the land-owners, as herein provided for, then the president of said levee board shall contract for the construction or performance of said work in such parcels or divisions as may be to the best interest of the levee district. Said contracts shall be let to the lowest responsible bidder; to this end the president of said levee board shall cause a letting of said work to be advertised throughout said district, for thirty days, asking for sealed proposals on each and every item of the work so advertised, and upon a certain day therein named, with the aid of the secretary and treasurer of said board, open and canvass said sealed proposals and award the same: Provided, that any and all bids may be rejected, and that no proposal shall be entertained without such guarantee of good faith as the board may require: Provided, further, that the board shall require of all contractors an approved bond. in a sum equal to the estimated cost of work so contracted for, to secure the prompt execution of their contract, conditioned to pay any damages which will result to the land-owners of said district from a failure to perform their said contracts, or by reason of a negligent performance of the same: Provided, however, that in case of a break in the levee, or a break threatened by caving bank or other cause, demanding immediate attention, the president of said board may and is hereby authorized to take such action in the case as may best protect the interests of the district."

On argument of the demurrer to the original petition herein, it was insisted, inter alia, by defendant's counsel, that the board of directors, in entering into the alleged contract sued on, had not complied with the provisions of said sections 6 and 22 of the enabling act; that they had not taken the preliminary steps therein provided

as prerequisite to the exercise of authority to enter into any such contract. When the court came to consider that question, it discovered that it did not affirmatively appear on the face of the petition on what statute or legislative act the contract was predicated, nor did it affirmatively appear whether or not the board of directors had taken the preliminary steps required by said statute in obtaining the assent of the taxpayers of the district to make such contract. As the determination of this question was deemed by the court to be vital, in sustaining the demurrer the court invited the plaintiffs, in their amended petition, to state plainly and candidly the facts as to whether or not the things required of said board by the statute had been done, with the suggestion that by such a course the plaintiffs could invite a demurrer, and, by having this question of law determined in advance, the parties might avoid the unnecessary trouble and expense of a trial. But the amended petition evidently seeks to evade an open avowal as to this question of fact, thereby creating a strong inference that the facts are adverse to the plaintiffs. The amended petition alleges, in substance, that in the month of September, 1894, the plaintiff Forest—

"Entered into a contract with the United States to build and construct a levee of earth along and near the western bank of the Mississippi, in the county of Pemiscot, etc., to protect the land west of said levee from overflow by said river, and that by the terms thereof said Forest was not required to begin his work thereunder until during the summer of the year 1895, and that on the 8th day of November, 1894, the defendant entered into a contract with the plaintiffs, wherein, in consideration that the plaintiffs would use every possible effort to finish the said contract of said Forest with the United States before the next high water in the Mississippi river, which was to be apprehended in the summer of 1895, the defendant, among other things, agreed to pay the plaintiffs, in bonds or written acknowledgments of indebtedness, called 'script,' of the defendant, at the discretion of plaintiffs, five cents for every cubic yard of earth put by plaintiffs on the said levee in the construction thereof, so far as the same was constructed in said St. Francis levee district, which was to be determined by said Forest's monthly estimate of work done under his said contract with the United States on said levee, and allowed by the United States, until such time as the plaintiffs should be forced to suspend the work under said contract by reason of high water in the said Mississippi river."

The petition then avers a performance of this contract by the plaintiffs, and a failure of the defendant to pay therefor.

It is to be conceded, to plaintiffs' contention, that where a corporation is invested by its charter with power to enter into a specific contract on certain conditions, to be performed antecedently, it is sufficient, in declaring thereon, to aver the making of a contract. If some act or requirement of the charter be a prerequisite to the validity of such contract, it is a matter of defense, to be pleaded by the defendant. Barber Asphalt Paving Co. v. City of Denver, 19 C. C. A. 144, 72 Fed. 341. It is something like an action predicated of a contract, which, by the statute of frauds, is required to be in writing. When the petition declares upon the contract, the presumption of law is that the contract was such as the law authorizes, and this presumption continues until the contrary fact is made to appear on the trial of the case. Springer v. Kleinsorge, 83 Mo. 155. But, notwithstanding this rule of plead-

ing, and notwithstanding the manifest purpose of the pleader to evade a direct admission, if it be apparent from the face of the petition, taken as an entirety, that the antecedent steps required by the statute to authorize the board of directors to enter into the given contract were not in fact taken before it attempted to make the alleged contract, it will invite a demurrer, and raise the validity of the contract.

An analysis of the amended petition renders it quite plain, to my mind, that the requirements of said sections 6 and 22 were not complied with by the levee board before entering into this contract. In the first place, as has already been shown, the petition alleges that the plaintiff Forest first entered into a contract in September, 1894, with the United States, for the construction of this levee, and that the co-plaintiff McCadden came into the arrangement with the plaintiff in November, 1894, by which it was agreed with the defendant to pay the plaintiffs a bonus of five cents on said contract with the government for doing said work, in consideration that they begin the work at an earlier date. As evidence that the work done by the plaintiffs was in execution of the said contract with the United States, and under its supervision, the petition declares "that they entered upon the performance of said contract with the United States in the month of October, 1894, and continued said performance without interruption or cessation, and finished all of the work called for by said contract"; evidently referring to the contract with the United States, for it proceeds in the same connection to state "that, while they were performing their work under the said last-mentioned contract, they were not forced to suspend said work by high water in the said Mississippi river." This is followed up with the averment "that, under said contract with the United States on the levee in the said district," they put on the said levee specified cubic yards of earth. It then declares that the said Forest was entitled to payment from the said United States under his said contract for placing all the said cubic yards of earth on said levee, and that his monthly estimates with the United States showed that he had earned the payment of all of said work, and the United States allowed the said estimates, and admitted that all of said work had been done, and paid said Forest therefor. From this it is quite apparent that the work done by these plaintiffs, as already suggested, was under the supervision and direction of the government of the United States, its agents and officers, and that the estimates thereof were allowed by the United States, and on this estimation the petition counts; whereas, by section 23 of the act of the legislature authorizing the board of directors to execute such contract it is expressly provided that:

"All work let or contracted for by said board, as herein provided for, shall be executed according to plans and specifications furnished by said board, and made a part of said contracts, and shall be performed under the supervision and to the satisfaction of the chief engineer; and when partial payments from time to time are contracted for, they shall be made upon estimates furnished by said engineer, and fifteen per cent. retained to guaranty a faithful performance of contract; and final settlement of said contractors shall be made only upon

estimates furnished by said engineer, and his certificate that said work has been performed and completed to his satisfaction."

Again, by section 11 of this act, the regular annual meeting of the board of directors is fixed for the second Monday in May of each year. Then section 22, as already quoted, provides that the time when the board of directors shall decide to do any certain amount of work that year shall be at a regular annual meeting of the board. It is, therefore, apparent that no such action was taken at any regular meeting of the board, which for that year would have been the second Monday in May, as the contract between Forest and the United States was not made until the month of September, and the contract in question supervened on November the 8th following. It is also inconceivable, under the allegations of the petition, that after Forest had entered into his contract with the United States for this work, and the negotiations had with the board of directors in respect thereof by the plaintiffs, there could have been a compliance with the requirements of section 22 by the 8th day of November. In the first place, there had to be an approval by the landowners, as provided in section 6, to be followed by the letting of the proposed contract after advertisement throughout the district for 30 days, asking for sealed proposals on every item of the work, to be followed by a canvass of the proposals, and award of the contract to the lowest bidder, and bond then to be taken and approved to guaranty the performance of the work by the contractor. On the contrary, the very framework of the petition precludes the idea of any competitive bidding. The contract providing for the manner of constructing the work, the cost thereof and mode of estimating the same were provided for in the contract between Forest and the United States. The landowners of the district had no voice therein, nor gave any assent to be assessed therefor. There could have been no awarding of the contract among competing bidders, because the petition shows that the board entered into the contract with the plaintiffs upon the bald proposition to pay them the arbitrary sum of 5 per cent. upon the gross sum agreed to be paid by the United States. Such a transaction is not within the spirit or the terms of the statute. It cannot be assumed that the landowners of this district would have given their consent to such an arrangement. On the contrary, it is within the bounds of reasonable presumption that, the United States having undertaken to have this work done on its own account, the landowners would hardly, in the fall of 1894, have willingly consented to vote a tax upon themselves for the same work out of a mere apprehension that a rise in the river, not to be anticipated before the freshets of 1895, might come before the work was completed. The only instance in which the board of levee directors is authorized to act and incur liabilities in this respect without consulting the landowners, and without a compliance with the directions of sections 6 and 22, is contained in the last proviso of section 22, to wit:

"In case of a break in the levee, or a break threatened by a caving bank or other issue demanding immediate attention."

Clearly, no such emergency existed in this case, as no dangerous rise in the river was apprehended before the summer of 1895, and the petition asserts that none occurred even then.

It hardly needs the citation of authorities on the proposition that the plaintiffs, in dealing with the board of directors, created by a special enactment of the legislature, must take notice of the limitations and conditions imposed by the act of their creation. If any of the essential proceedings prescribed by the statute for investing the officers of such a corporation with power to contract be dispensed with, no liability is imposed upon the corporation by reason of such a contract. McClure v. Oxford Tp., 94 U. S. 429; National Bank of Commerce v. Town of Granada, 48 Fed. 278; Id., 4 C. C. A. 212, 54 Fed. 100; Pearce v. Railroad Co., 21 How. 442; Matthews v. Skinker, 62 Mo. 329.

As a body corporate, the defendant has a right to say to the demand of the plaintiffs, "Non hæc in fœdera veni." The demurrer is sustained.