THE CHICAGO, KANSAS & WESTERN RAILROAD CO. V. THE
    BOARD OF COMMISSIONERS OF OSAGE COUNTY.

1. RAILROADS — *Construction* — *Limit of Township Aid.* The proviso contained in section one of the act to enable counties, townships and cities to aid in the construction of railroads, etc., page 783, Compiled Laws of 1885, is a limitation on the amount to be subscribed by a township to aid in the construction of railroads, whether extended to one or to several railroad companies. It prescribes a limit as to the amount of bonds to be issued, beyond which the commissioners cannot go for any purpose. Up to this limit, aid may be voted to one railroad company, or it may be divided among several; but the sum of $15,000 and five per cent. additional of the assessed value of the property of the township is all that can be legally voted and issued, under any circumstances.

2. TWO RAILROAD COMPANIES — *Which Entitled to Bonds.* When the board of county commissioners is authorized by a favorable vote of the electors of a township to subscribe on behalf of said township in the full amount that the township is authorized by law to subscribe to the capital stock of a railroad company that proposes to build its line through said township, on the terms and conditions prescribed in the vote, and a subscription is duly made and accepted in writing by the railroad company, the subscription and its acceptance create a contract binding on the township; and when the railroad company performs all the terms and conditions, it is entitled to the bonds of the township in preference to another railroad, to whose capital stock a subsequent subscription was made, but which first complied with the terms and conditions of such subsequent subscription.

*Original Proceedings in Mandamus.*

ON December 28, 1885, the county board of Osage county made an order submitting to a vote of the qualified electors of the township of Agency, in said county, the question whether

or not it would subscribe for three hundred shares of one hundred dollars each, of the capital stock of the Kansas, Nebraska & Dakota Railroad Company, on the condition that said road shall construct and complete its line of railroad of standard gauge, from a point within the corporate limits of the city of Fort Scott, Bourbon county, Kansas, thence through said township to some point on the north line thereof, and have the same in operation and the cars running thereon by the first day of January, 1887; and shall have established and erected a freight and passenger depot at a point not exceeding one-eighth of a mile from the corporate limits of the city of Quenemo, in said township, together with proper side tracks and stock-yards sufficient to do the business there offered; and when said railway company shall have constructed and completed its said line of railroad of standard gauge from said point within the corporate limits of said city of Fort Scott, Bourbon county, Kansas, through said township (as hereinbefore set forth) and to said point on the north line thereof, and have the same in operation and the cars running thereon, then the bonds of said township in the sum and to the amount of thirty thousand dollars shall be issued and delivered to said railway company, in full payment of and for said three hundred shares of said full-paid capital stock.   The result of the election held on February 9, 1886, was in favor of said township subscription to the capital stock of said railroad company on the terms and conditions above stated.   On February 12, 1886, the county board of said county ordered the county clerk thereof to subscribe the stock for and on behalf of Agency township, which subscription was thereupon made in accordance with said order and the vote of the township; and thereupon the railroad company filed its written acceptance of said subscription to the capital stock of its road.

On January 5, 1886, the county board of Osage county made an order submitting to a vote of the qualified electors of the township of Agency, in said county, the question whether or not it would subscribe for two hundred and ten shares of one hundred dollars each of the capital stock of the Ottawa,

Osage City & Council Grove Railroad Company, on the condition, as soon as said proposition should be determined in the affirmative, by a canvass of the votes cast at said election, the board shall immediately convene, and order the county clerk of said county to make, and the county clerk shall accordingly make, said subscription upon behalf and in the name of said township of Agency, for said number of shares of said capital stock as so voted for; and when said road is built across said township of Agency, from a crossing of the Atchison, Topeka & Santa Fé Railroad in the township of Superior or Burlingame, by the laying of a track and the running of cars thereon, and upon notice thereof being given to said commissioners, they shall promptly inspect said road, and if it is constructed according to the provisions and specifications hereof, they shall cause said bonds (the same being legally executed) to be promptly delivered to said railroad company in exchange for the shares of said capital stock so voted for. It is understood and agreed that the depot of the said road shall be located within one-fourth of a mile of the present town-site of the city of Quenemo; that said railroad shall be tied, bridged, ironed and equipped in a substantial and suitable manner as a standard-gauge railroad for the transportation of freight and passengers, and the same shall be completed and in operation and have cars running thereon in and through said township within nine months from the first day of January, 1886; that the rails on said road shall be of new steel of not less than fifty pounds weight to the yard; that said road shall be fenced with a good and sufficient fence as the same is constructed, and shall be constructed with cattle-guards and road-crossings in accordance with the laws of Kansas; that said company shall construct and maintain suitable and sufficient depot buildings and track facilities in said township as shall accommodate the business of said township. The result of the election held on February 20, 1886, was in favor of said township subscription to the capital stock of said railroad company, on the terms and conditions set forth in the order aforesaid. On August 2, 1886, the railroad was completed in

substantial compliance with all the terms and conditions imposed by the subscription thereto. On August 3, 1886, the Chicago, Kansas & Western Railroad Company (successor by consolidation with the Ottawa, Osage City & Council Grove Railroad Company) tendered to the county board $21,000 of stock in its road, and demanded the issuance to it of the bonds of Agency township to the amount of $21,000, voted for by said township on February 20, 1886. Thereupon the board refused to comply with said demand.

On August 26, 1886, the *Chicago, Kansas & Western Railroad Company* brought in this court this action against the county board of Osage county, to compel the issuance of the bonds by it demanded as aforesaid. An alternative writ of mandamus was issued and served upon the defendant board. The defenses set up were: The subscription to the capital stock of the Kansas, Nebraska & Dakota Railroad Company; its compliance with all the conditions of that subscription, and the issue and delivery of $26,000 of the bonds of the township in payment of that subscription; that the amount of the subscription to that railroad of $30,000 is the full amount said township is authorized by law to issue in aid of railroads, viz.: $15,000, and five per cent. of the assessed valuation of said township.

Other facts are stated in the opinion herein, filed at the session of the court in February, 1888.

*D. T. McIntyre*, for plaintiff; *Geo. W. McCrary*, of counsel.
*J. G. Slonecker*, and *Thomson & Heizer*, for defendant.

Opinion by SIMPSON, C.: The questions discussed in this controversy are public in their nature, and involve some very important consequences to the people in many townships. They all arise on the construction of the act to enable counties, townships and cities to aid in the construction of railroads, etc. (Comp. Laws of 1885, pp. 783–785.) Here two railroad companies are contending that each is first entitled to have the bonds of Agency township, in Osage county, issued to it, be-

cause of elections authorizing subscriptions to their capital stock, the subscriptions having been made on certain terms and conditions, and performance of all these having been duly made by each of said companies. It is conceded by stipulation, that all the election proceedings which authorized subscriptions to both roads are regular and valid. The election for a subscription to the capital stock of the Kansas, Nebraska & Dakota Railroad Company was ordered on the 28th day of December, 1885, to be held on the 9th day of February, 1886, and was so held on that day. The returns were canvassed on the 12th day of February, 1886, and it was declared as the result of said election that a majority had voted in favor of making such subscription. On the same day, February 12, the board of county commissioners ordered the county clerk to make such subscription, on the terms and conditions submitted in the order for the election; and thereupon on that day he subscribed to the capital stock of the Kansas, Nebraska & Dakota Railroad Company, as set forth in the statement of this case. On the same day the subscription was accepted in writing, by the railroad company. The road was completed in accordance with the terms and conditions of the subscription, on or before the 11th day of November, 1886; on that day it delivered the stock of the road to the treasurer of the township, and bonds were accordingly issued to it to the amount of twenty-six thousand dollars. The election for a subscription to the capital stock of the Ottawa, Osage City & Council Grove Railroad Company was ordered on the 5th day of January, 1886, to be held on the 20th day of February, 1886, and was so held. The returns were canvassed on the 26th day of February, 1886, and it was declared as the result of such canvass that a majority had voted in favor of making the subscription. The county clerk was ordered by the board of county commissioners to make such subscription on the 26th day of February, 1886, and on that day he made the subscription to the capital stock of the Ottawa, Osage City & Council Grove Railroad, as set forth in the order calling the election. The road was completed on the 2d day of August, 1886, in

substantial compliance with all the terms and conditions imposed by the subscription. Tender of stock and demand for the bonds of the township were made to the board, and refused for the reason that there was a previous subscription to the capital stock of the Kansas, Nebraska & Dakota Railroad Company, for which bonds had been issued, and that the aid so voted to the two companies would amount in the aggregate to more than $15,000 and 5 per cent. of the assessed value of the property of said township, and thus exceed the limit of the issue of the bonds as authorized by law. It is stipulated that the Ottawa, Osage City & Council Grove Railroad Company was duly consolidated with and has become a part of the relator, the Chicago, Kansas & Western Railroad Company.

The theory of counsel for the relator is, that the limitation applies to the amount of bonds to be issued to any one railroad company; that the township can subscribe to the capital stock and issue bonds in payment therefor to several railroad companies, but can only subscribe stock and issue bonds to any one of that number, to the extent of $15,000 and 5 per cent. of the assessed value of the property of said township; that the power of the township to subscribe stock and issue bonds is unlimited as to the number of railroads in whose aid this can be done, but is limited as to the amount it can aid any one particular railroad.

It is also claimed on behalf of the relator, that under the act of the legislature the subscription by a township to the capital stock of a railroad company is but one of a series of acts that are all made or done on the condition of ultimate performance by the railroad company of all the terms and conditions upon which the subscription was voted; that it requires performance of the vote and subscription, and nothing short of that, to create a contract; and *that the date of the performance is the date of the contract.*

I. We shall first consider the nature of the limitation contained in § 1, because if the construction contended for by the

relator is the true one, the peremptory writ must be issued. That section is as follows:

"SECTION 1. Whenever two-fifths of the resident tax-payers of any county, or two-fifths of the resident tax-payers of any municipal township, shall petition in writing the board of county commissioners, or whenever two-fifths of the resident tax-payers of any incorporated city shall petition the mayor and council of such city, to submit to the qualified voters of such county, township, or city, a proposition to subscribe to the capital stock of or to loan the credit of such county, township or city, to any railroad company constructing or proposing to construct a railroad through or into such county, township, or city, the county commissioners for such county or township, or the mayor and council of such city, shall cause an election to be held to determine whether such subscription or loan shall be made: *Provided*, No county shall issue under the provisions of this act more than one hundred thousand dollars and an additional five-per-cent. indebtedness of the assessed value of such county; and no township shall be allowed to issue more than fifteen thousand dollars and five per cent. additional of the assessed value of the property of such township; and in no case shall the total amount of county, township and city aid to any railroad company exceed four thousand dollars per mile for each mile of railroad constructed in said county: *Provided further*, That at any subsequent election to be held for the same purpose the same shall not be held unless upon a petition of a majority of the legal voters of such county, township, or city." (Comp. Laws of 1885, ch. 84, § 68.)

It would seem that there could not be very much variety of opinion as to the scope, bearing and effect of this limitation. As we construe it, the limitation restricts the power of the county, township or city to issue bonds to aid in the construction of railroads to a certain amount, no matter whether to one or several railroads. No county, township or city can under any circumstances issue, if a county, more than $100,000 and an additional five-per-cent. indebtedness of the assessed value of such county, or if a township, more than $15,000 and five per cent. of the assessed value of the property of such township, to aid in the construction of railroads. This is the limit of their power to issue bonds for railroad purposes, under the provisions of this act. Applying every rule of

statutory construction to this provision, the words, context, subject-matter, the spirit and reason of the law, and it results in the inevitable conclusion that the intent of the legislature was to place a limit on the amount to be voted to aid railroads. If added strength to plain legislative expression is necessary, it can be found in the concluding words of the proviso: "And in no case shall the total amount of county, township and city aid to any railroad company exceed four thousand dollars per mile for each mile of railroad constructed in said county." The two preceding provisions are, that "no county or township shall issue under the provisions of this act more than," etc., etc. The concluding one is, "in no case shall the total amount of county, township and city aid to *any* railroad company exceed," etc., etc. The section means that a county can issue only $100,000 and an additional five per cent. of the assessed value. This issue may be to only one railroad company, or it may be divided between several; but if the full amount is at first subscribed to some one railroad company, it has no power to subscribe to the capital stock of any other railroad company. So with a township: it can subscribe $15,000 and an additional five per cent. of its assessed value to aid the construction of railroads through it; the full amount can be subscribed to one railroad company, or it can be divided between several companies; but if it subscribes the full amount allowed to one company its power is exhausted, and it cannot subscribe to others. These are plain provisions, clearly expressed, easily understood, and not difficult to enforce; and being legislative commands, are as binding on this court as they are on the people and agents of the various municipalities and the railroad companies.

When the legislature of the state, by a series of enactments extending through several sessions, and continuing for years, makes it plain that there has been adopted with reference to a certain question a settled state policy, its legislation on that question must be viewed by the court in the light of that policy. The first general act authorizing counties to vote aid in the construction of railroads was passed by the legislature of this

state at the session of 1865, and it authorized the counties to subscribe an amount not exceeding $300,000 in any one corporation. Its practical operation worked great hardships in some of the counties of the state, and the limit has been gradually reduced until now the maximum aid to any one railroad company cannot exceed $2,000 per mile. The first general law authorizing townships to subscribe to the capital stock of railroad companies, and thus aid in their construction, was passed in 1870, and since that time the legislative tendency has been to reduce the amount, so that it can be fairly said that the fixed legislative policy has been to reduce the amount of subscription; and our construction must harmonize with such a policy. The same view of the limitations contained in this section was taken by this court in the case of *Turner v. Comm'rs of Woodson Co.*, 27 Kas. 314. The limitation was applied to a different state of facts, but it is stated in plain terms and unmistakable language in the opinion in that case, that "the prohibition in the statute is on the issue of the bonds, no matter what amount may be issued or voted; the statute steps in and prescribes a limit beyond which the commissioners may not go." This authoritative construction of the prohibitory clause necessarily excludes any such construction as is now contended for. It may be, if only one railroad can be built through a township by virtue of this construction, that its existence may encourage monopolistic tendencies; but this is a stricture upon the policy of the enactment, and should be directed to the legislature rather than to the court.

II. It is stipulated that the taxable property of the township of Agency, on the date of the completion of the Chicago, Kansas & Western Railroad through the township, was the sum of $219,169.22, and as the bonds issued to the Kansas, Nebraska & Dakota Railroad were for the full amount authorized by law, the limitation contained in §1 prevents an issue of bonds to pay the subscription to the first-named railroad company; and this necessitates the determination of the other question raised and discussed by counsel for the relator.

If there is any legal obligation created against a town-

ship, by virtue of a subscription to the capital stock of a railroad company, it arises from the fact that the action of the township with respect to the vote, subscription, and other proceedings prescribed by the statute authorizing it, are regarded as a contract. Quite a number of the very many questions presented by such statutory provisions have been determined by courts of last resort in this country, and various other features of such enactments have been incidentally considered, and some of the results of all judicial investigation with reference to these enactments may be thus summarized : That the purpose of an election under the statute is to ascertain whether the popular will would authorize and sanction such a subscription; the people in their primary capacity cannot contract; they can approve or disapprove a contract made by their agents; the power to contract is vested solely in the board of county commissioners; the board must be empowered to so contract, by a vote of the people; when it is so empowered, it can bind the municipality by a contract. Thus far there seems to be unusual unanimity in the decisions, and all these propositions are conceded by counsel for the relator. They concede that there must be a contract; that their right to enforce performance against the defendant county board rests on contract; but their precise contention is, as to the date of the contract. They say that a subscription under the law is conditional upon the performance of a certain act, or a series of acts, in a certain designated manner, and within a certain prescribed time, and then that there is no undertaking whatever on the part of the railroad company, either that it will perform these conditions, or surrender the stock in exchange for the bonds upon the performance of the conditions, and that these things distinguish a subscription under the provisions of the statute, from an ordinary subscription of stock by an individual, which contemplates nothing but the payment of money and the reception of the stock.

This statement of the counsel for the plaintiff of the nature of a municipal subscription, the resulting logic of which is that in all cases there must be an exact and literal performance

of all conditions before any obligation arises as against the municipality, totally ignores the manifest fact that in this case there was, contemporaneous with the subscription by the county clerk, as ordered by the county board, to the capital stock of the Kansas, Nebraska & Dakota Railroad Company, a written acceptance of said subscription, made and filed by the railroad company. So that, independent of the legal consequences of the act of subscription by the county clerk as ascertained and determined by statutory construction, this case presents a written agreement, by which the county clerk, duly empowered, made a subscription upon certain express conditions, and it was accepted by a positive act of the corporation, evidenced by its writing, and signed by its president. This constitutes an express and specific agreement as between the township of Agency and the Kansas, Nebraska & Dakota Railroad Company, which either party could enforce by proper action. The great weight of authority is, that the act of the subscription by the officer duly authorized by a favorable vote of the people, whose agent he is, constitutes a contract. (1 Rorer on Railroads, p. 126, and authorities cited in foot-notes; *Aspinwall v. Comm'rs of Daviess Co.*, 63 U. S. 364.) The case of *U. P. Rly. Co. v. Comm'rs of Davis Co.*, 6 Kas. 256, decides the proposition contended for by counsel for the relator, adverse to their views. In that case there was substantial performance of the conditions of the vote authorizing the county commissioners to subscribe, but they never did subscribe, and hence this court holds that there was no contract. The vote authorizing the commissioners to subscribe did not create a contract; it only empowered them to contract; they never did make any contract; they never did subscribe to the capital stock of the railroad company; and although the railroad company built the road through the county in substantial compliance with the terms of the vote, the act of subscription was wanting, and the railroad company could not get the bonds. The logic of this case is in harmony with all others on the subject, that the act of subscription creates the contract.

The contract made with the Kansas, Nebraska & Dakota

railroad company, by the act of subscription to its capital stock by the county clerk, on behalf of the township of Agency, having been performed by the railroad company in all respects, and having been made before the contract with the relator was created by a subscription to its capital stock, and the full amount of bonds which the township of Agency was authorized to issue, at the time of performance of the conditions of the contract by the Kansas, Nebraska & Dakota Railroad, having been issued and delivered to that railroad company, a peremptory writ of mandamus is refused the relator.

By the Court: It is so ordered.

All the Justices concurring.