RATHBONE **v.** BOARD OF COM'RS OF KIOWA COUNTY.

(Circuit Court. D. Kansas, Second Division. March 19, 1896.)

No. 467.

1. COUNTY RAILWAY-AID BONDS—VALIDITY—VOTING—EXCESSIVE AMOUNT.

The voting for an issue of bonds in excess of the amount allowed by the statute does not invalidate the vote, and bonds may be issued thereunder up to the lawful limit: but where, at the same election, bonds are voted for two railroads, in amounts which, taken singly, are in excess of the limit, and the subscription is first made by the county commissioners to one of the roads for the full amount voted for it, a subsequent subscription to the other is entirely void. Chicago, K. & W. R. Co. v. Commissioners of Osage Co., 16 Pac. 828, 38 Kan. 597, followed and applied.

2. SAME—INNOCENT PURCHASERS—NOTICE—RECITALS.

Every dealer in municipal bonds, which upon their face refer to the statute under which they were issued, is bound to take notice of the statute and all its requirements; and if there is want of power to issue the bonds, they are void in the hands of innocent purchasers, regardless of other recitals contained therein.

3. SAME—CONSTRUCTION OF STATUTES.

Whenever the power to issue bonds is called in question, the authority must be clearly shown, and will not be deduced from uncertain inferences. It can only be conferred by language which leaves no reasonable doubt of an intention to grant it. Brenham v. Bank, 12 Sup. Ct. 559, 144 U. S. 173, and Ashuelot Nat. Bank of Keene v. School Dist. No. 7, Valley Co., 5 C. C. A. 468, 56 Fed. 197, followed.

4. SAME.

In a general law providing for the organization of new counties, a proviso that "no bonds of any kind shall be issued by any county, township, or school district, within one year after the organization of such new county" (Act Kan. Feb. 18, 1886), prohibits, not only the issuance of the bonds within the year, but also the taking of any of the prescribed preliminary steps, such as the voting by the people of authority to issue them. Coffin v. Commissioners of Kearney Co., 6 C. C. A. 288, 57 Fed. 137, applied.

5. SAME—CONSTITUTIONAL LAW—GENERAL AND SPECIAL ACTS.

The constitution of Kansas declares that "all laws, of a general nature, shall have a uniform operation throughout the state, and in all cases where a general law can be made applicable, no special law shall be enacted." The general law of February 18, 1886, providing for the organization of new counties, contained these two provisos: "Provided, that none of the provisions of this act shall prevent or prohibit the county of Kiowa * * * from voting bonds, at any time, after the organization of said county; and provided, further, that no bonds of any kind shall be issued by any county * * * within one year after the organization of such new county." *Held,* that the proper construction of these provisos was that no new counties, except Kiowa, could either vote or issue bonds during the first year, but that Kiowa county might vote bonds within the year; that the effect of the proviso in favor of Kiowa county was to prevent a general law from having a uniform operation, and that proviso was therefore void. Darling v. Rodgers, 7 Kan. 598, and Robinson v. Perry, 17 Kan. 248, applied.

6. SAME—INNOCENT PURCHASERS—RECITALS.

Dealers in municipal bonds are bound to know the law; and a county is not estopped by a recital in the bonds that the vote and subscription were had "in pursuance" of a certain statute, when, under its true construction, such statute was not applicable to the county, at the time the vote was taken, because it had been organized for less than a year. Dixon Co. v. Field, 4 Sup. Ct. 315, 111 U. S. 92, National Bank of Commerce v. Town of Granada, 4 C. C. A. 212, 54 Fed. 100, and Coffin v. Commissioners of Kearney Co., 6 C. C. A. 288, 57 Fed. 137, applied.

This was an action by Charles D. Rathbone against the board of county commissioners of the county of Kiowa, Kan., upon coupons of county railway-aid bonds. Plaintiff has demurred to the answer filed by the defendant.

Gleed, Ware & Gleed, for plaintiff.

S. S. Ashbaugh and L. M. Day, for defendant.

WILLIAMS, District Judge. This suit is instituted upon past-due coupons, detached from 16 bonds, of $1,000 each, issued by the defendant county to the Kingman, Pratt & Western Railroad Company, and upon past-due coupons, detached from 30 bonds issued by the defendant to the Chicago, Kansas & Nebraska Railway Company. In each instance, the bonds were issued in payment of stock subscribed for by the defendant, in the respective companies.

Without stating the matters alleged in the answer in detail, it will be sufficient to say that the defendant county avers the bonds were issued by persons who were not clothed with power to issue the same, in disregard of the law governing the issue of this class of bonds, and that the amount issued is in excess of that which could be issued under the law. To the answer a general demurrer has been filed. All the steps taken by the county officers, in relation to the election, the canvass of the vote, and making of the subscriptions, if done at a time when the law authorized them to be done, appear to be regular.

The laws of Kansas authorize counties to subscribe for stock in railroad companies, and pay for the same with bonds of the character of those from which the coupons in suit are detached. The amount of indebtedness which may thus be created is fixed by statute:

"No county shall issue, under the provisions of this act, more than one hundred thousand dollars, and an additional five per cent. indebtedness, of the assessed value of such county, and in no case shall the total amount issued to any railroad company exceed four thousand dollars per mile, for each mile of railroad constructed in said county." Comp. Laws 1885, p. 783, § 68.

The courts of Kansas, in the construction of this act, have held that, after a proper petition has been filed, the board of commissioners of the county can be compelled to make an order for the holding of an election and submit the proposition of voting bonds to the voters of the county. They have also held that, after a subscription has been made, the officers designated by the statute to sign the bonds can be compelled to sign the same. In addition to this, they have held that, after the subscription has been properly made and accepted, this creates a binding contract which can be enforced by law.

As will be seen, the amount of bonds which may be issued by any county, under the law, is $100,000, and an additional 5 per cent. indebtedness of the assessed value of such county. The assessed value of the defendant county, on the 23d of March, 1886, was $236,662. The greatest amount of bonds then which could be issued, under the act, was $111,833.10. There were two propositions for bonds before the board of commissioners,—the one for $115,000 to one com-

pany, and $120,000 to another, the two amounts aggregating $235,-000; and the assessed value of the county was only $236,662. Both propositions were submitted to the voters at the same election, and both were declared carried. Either of the sums so voted are greater than the limit prescribed by the act. But it was held, in Chicago, K. & W. R. Co. v. Commissioners of Osage Co., 38 Kan. 597, 16 Pac. 828, that the voting for more bonds than could be lawfully issued did not invalidate the vote, and that bonds, under such a vote, might be issued to the lawful limit. Hence, the question of the amount voted passes out of the discussion.

On the 25th of June, 1886, the board of commissioners authorized the county clerk to make a subscription to the Chicago, Kansas & Nebraska Railway Company for 1,200 shares, of $100 each. The order is as follows:

"And the said board of commissioners of said county, as provided for in said proposition, and by law in such case, do now and hereby order and direct that the county clerk of said county of Kiowa, state of Kansas, do and shall, for and in behalf and in the name of said county of Kiowa, at once, subscribe, and make due and proper subscription of, twelve hundred shares, of one hundred dollars each, to the capital stock of the said Chicago, Kansas & Nebraska Railway Company," etc.

In pursuance of this order, and on the same day, the county clerk executed the following instrument:

"Whereas, on the 25th day of June, 1886, the board of county commissioners of the county of Kiowa, in the state of Kansas, did make and enter of record. upon the journals of its proceedings, an order directing the county clerk of said county of Kiowa, for and in the name and on behalf of said county of Kiowa, to make due and proper subscription to twelve hundred shares, of one hundred dollars each, of the capital stock of the Chicago, Kansas & Nebraska Railway Company," etc.: "Now, therefore, I, J. M. Crawford, county clerk of the county of Kiowa, state of Kansas, in pursuance of the statute in such case made and provided, and in obedience to the said order of the board of county commissioners, do hereby subscribe to, and make subscription of, twelve hundred shares, of one hundred dollars each, of the capital stock of said Chicago, Kansas & Nebraska Railway Company, for and on behalf of and in the name of the county of Kiowa, state of Kansas, and I do hereby take twelve hundred shares of the capital stock of said railway company, in the name of said county, and for its behalf and benefit," etc.

"In testimony whereof, I have executed, and signed and executed, this instrument and subscription, by subscribing my name hereunto, as county clerk of said county, and attesting the same under the seal of the said county of Kiowa, state of Kansas, at my office in Greensburg, the county seat of said county, this 25th day of June, 1886.

"[Signed]                                          J. N. Crawford,
                "County Clerk of the County of Kiowa, State of Kansas."
        "Approved:
        "J. W. Gibson,
        "J. L. Hadley,
                "Board of County Commissioners of Kiowa County, Kansas."

The action of the county clerk, in executing this instrument, on the day of its execution, was reported to the board of county commissioners, and it made the following order thereon:

"The clerk of said county thereupon informs the board of county commissioners of said county of Kiowa that, in obedience to the foregoing order, he has made the subscription of stock, as required by said order, and now submits the same for approval, which is done by said board, and the said board further orders that the subscription, so made by the county clerk, be copied and spread

upon the minutes and record of proceedings of said board, and that said subscription be delivered to said company, as provided in the foregoing order, and it is accordingly so done."

This action of the board of county commissioners, in connection with that of the county clerk, on the 25th day of June, 1886, under the adjudications of the courts of Kansas, constituted a concluded contract, if, at the time these acts were performed, the parties performing them had the power to act for and bind the county.

On the 2d of August, 1886, the board of commissioners of said county made the following order:

"Board ordered clerk to subscribe for eleven hundred and fifty shares of the Kingman, Pratt & Western Railroad Company, at the value of one hundred dollars each, for the benefit of said county of Kiowa."

On the same day the county clerk executed a similar instrument to that mentioned in the case of the subscription to the Chicago, Kansas & Nebraska Railway Company.

Waiving, for the time being, the question of whether the board of commissioners of Kiowa county had the power to order a vote on the proposition submitted, and whether they could make a binding subscription, upon which bonds might thereafter be issued, until after the expiration of one year, the question is, which of these subscriptions shall stand? The supreme court of Kansas has settled this precise question. In Chicago, K. & W. R. Co. v. Commissioners of Osage Co., 38 Kan. 597, 16 Pac. 828, which was a proceeding by mandamus to compel the issue of bonds voted to that company, it appears there had been two votes, as in the case at bar, to different companies, and the amount of the two, when added together, or taken singly, exceeded the amount of bonds which might lawfully be issued. The defense was a subscription had been made to the Kansas, Nebraska & Dakota Railroad Company, and that a delivery of bonds had been made to that company in payment of such subscription, and that this had exhausted the full amount which might be lawfully issued by the respondent in aid of railroads. The court, in speaking in response to that contention, say:

"No county can, under any circumstances, issue more than $100,000 and an additional 5 per cent. indebtedness of the assessed value of each county. This is the limit of their power to issue bonds, for railroad purposes, under the provisions of the act. * * * This issue may be to only one railroad company, or it may be divided between several; but, if the full amount is at first subscribed to some one railroad company, it [the county] has no power to subscribe to the capital stock of any other railroad company. * * * If it subscribes the full amount allowed to one company, its power is exhausted, and it cannot subscribe to others."

This being true, it follows that all the bonds issued to the Kingman, Pratt & Western Railroad Company are void, because the limit of bonds which might lawfully issue had been reached and exhausted when the subscription was made, on the 25th of June, 1886, to the Chicago, Kansas & Nebraska Railway Company. The bonds issued to the Kingman, Pratt & Western Railroad Company recite that they are issued under an act entitled "An act to enable counties * * * to aid in the construction of railroads and to repeal section eight of chapter thirty-nine of the Laws of 1874," approved February

25, 1876, and by acts of said legislature amendatory thereof and supplemental thereto. This act informed every dealer in bonds purporting to be issued under the provisions of that act that no more than $100,000 and the 5 per cent. therein mentioned could be issued thereunder. An examination of the records of the county would have shown the power to issue bonds had been exhausted.

At this late day it is hardly worth while to indulge in an extended citation of authorities in support of the proposition that every dealer in municipal bonds which, upon their face, refer to the statute under which they were issued, is bound to take notice of the statute and all its requirements, and of an equally well-settled rule that, if there is a want of power to issue the bonds, they are invalid in the hands of innocent purchasers, regardless of other recitals therein contained. In Nesbit v. Riverside Independent Dist., 144 U. S. 617, 12 Sup. Ct. 746, a statute was under consideration which declared that "no county shall become indebted, in any manner, or for any purpose, to any amount, in the aggregate exceeding five per centum on the value of the taxable property within such county"; and the court say: "She was bound to take notice of the value of taxable property within the district, as shown by the tax list." A like question arose in Sutliff v. Lake Co. Com'rs, 147 U. S. 234, 13 Sup. Ct. 318, under a similar provision; and the court held the purchaser of the bond was bound to take notice of the valuation of the taxable property of the county.

As against both classes of bonds from which the coupons in this suit are detached, the objection is made that Kiowa county could not vote for or issue bonds within one year after its organization. On the other hand, it is contended that there is nothing in the law which inhibited the defendant county from voting to issue bonds within one year after its organization, and that the inhibition in the statute in relation to new counties relates, solely, to the issuing of bonds. In that behalf it is urged that the proviso which contains the limitation against the issue of bonds by counties which have not been organized one year does not withhold the power to vote therefor. The most that can be said of a contention of this kind is that the power claimed on behalf of a new county to vote for bonds within a year after its organization is to be found in the silence of the statute. It is conceded that, in the matter of issuing bonds, counties which have been organized less than one year are not upon an equality with counties that have passed the year of probation. While this is conceded, it is denied that there is any inequality as to the power of voting to issue bonds. The rule of law in relation to the issue of negotiable bonds is that, whenever the power to issue is called in question, the authority to issue must be clearly shown, and will not be deduced from uncertain inferences, and can only be conferred by language which leaves no reasonable doubt of an intention to confer it. Brenham v. Bank, 144 U. S. 173, 12 Sup. Ct. 559; Ashuelot Nat. Bank of Keene v. School Dist. No. 7, Valley Co., 5 C. C. A. 468, 56 Fed. 197. It seems to me that the power claimed for the issue of the bonds in question rests entirely upon uncertain inferences, rather than upon affirmative language, which leaves the

mind free from doubt, as to the exercise of the power claimed. In the year 1876, the legislature of Kansas passed an act, of a general nature, providing for the organization of new counties. In that act there was a provision which declared "that no bonds, of any kind, shall be issued by any county, township or school district, within one year after the organization of such new county." On the 18th of February, 1886, it passed another act, covering the same subject as the act of 1876. This new act was a revision of the old, required a greater population, and threw some safeguards around the organization of new counties which were not in the act of 1876. In addition to this, it placed two provisos in the act of 1886, which are as follows:

"Provided, that none of the provisions of this act shall prevent or prohibit the county of Kiowa * * * from voting bonds, at any time, after the organization of said county. And provided, further, that no bonds of any kind shall be issued by any county, township or school district, within one year after the organization of such new county."

While this act was in force, on the 22d of June, 1886, an election was held in Kiowa county, and a vote was taken on a proposition to subscribe $115,000 to the Kingman, Pratt & Western Railroad Company and $120,000 to the Chicago, Kansas & Nebraska Railway Company, and the vote was canvassed on the 25th of June, 1886, and the vote for both companies declared carried. On the 10th of February, 1886, the legislature passed an act, entitled "An act to restore or re-create the county of Kiowa," and on the 18th of February, 1886, another act was passed, making Kiowa county a part of the Thirty-Ninth senatorial district, and on the 19th another act, placing that county in the Twenty-Fourth judicial district. These acts have no material bearing on this case, and are referred to only to show, hereafter, that the legislature had knowledge and took cognizance of the fact that the people residing upon the territory out of which the county was created expected, at an early day, to have a county organization, and why the legislature attempted to permit Kiowa county to exercise a power which it did not grant to other new counties, which had not obtained a perfect county organization. Kiowa county, at the date of these acts, had not become an organized county, under the laws of the state. The census taker, appointed by the governor, on the 19th of March, 1886, filed his report, and on the 23d of March, 1886, the governor made proclamation, that there were 2,704 bona fide inhabitants in said county, that 549 of them were householders, and that the value of the taxable property in the county was $236,662, and appointed three commissioners and a county clerk for said county. It is conceded that these officers qualified on the 27th of March, 1886, and, under the law, that from and after that date it was organized into what under the law of Kansas is called a "new county," and that it might do and perform whatever a new county might do.

Assuming, for the sake of argument, that the language of the proviso, found in the act of 1886, which declares that "none of the provisions of this act shall prevent or prohibit the county of Kiowa, or any township or school district therein, from voting bonds at any

time after the organization of said county," confers power on that county to have voted bonds before it had been organized one year, the question arises, as to whether the legislature could, in the manner it so attempted, effect that object?

Section 17 of article 2 of the constitution of the state declares:

"All laws, of a general nature, shall have uniform operation throughout the state, and in all cases where a general law can be made applicable, no special law shall be enacted."

The supreme court of Kansas, in Darling v. Rodgers, 7 Kan. 598, declared that this provision of the constitution of the state was mandatory, and not directory. That the act in relation to the organization of new counties is a general law, in the sense that word is used in the constitution, does not admit of doubt.

In Robinson v. Perry, 17 Kan. 248, an act declared:

"All persons owning or having sheep, shall keep the same from running at large, except in this act otherwise provided: provided, that the provisions of this act shall not apply to the county of Doniphan."

This act was amendatory of an act, passed in 1869, which inhibited sheep from running at large in certain counties, unless the legal voters of those counties should, by vote, otherwise declare. The court held that the act of 1869, which exempted the counties named, as well as the act in question, interfered with the uniform operation of the fence act, was void, and was obnoxious to the provision of the constitution quoted. Judge Brewer, in discussing this provision of the constitution, uses this language:

"The language is plain and positive that all acts of a general nature shall have uniform operation. No discretion is left to the legislature or the courts. * * * Now, the fence law of 1868 is, without question, a law of a general nature, and of uniform operation throughout the state. No part of its terms are repealed by the herd law. If the latter act be valid, the former no longer has a uniform operation throughout the state. That which was a general law, and had the required uniformity of operation, still remains the general law, but it is deprived of such uniformity. * * * Tested by this rule, the fence act of 1868 is valid, and the herd law of 1870 void. * * * But it is contended that the two clauses of this constitutional section must be construed together, and the positive requirements of the first clause considered as limited by the discretion given by the latter; * * * that power to pass special laws carries with it the power to limit the operation of the general law by special laws. * * * If the legislature can, by simply specifying the locality over which a law shall operate, change a law of a general nature, the obligations of this valuable constitutional provision are weaker than a rope of sand."

Now, what is the material difference between the acts referred to by Judge Brewer, and one that reads as follows:

"No bonds of any kind, shall be issued by any county, within one year after the organization of such new county: provided, that the provisions of this act shall not apply to the county of Kiowa."

The act of 1886 was evidently enacted as a general law, and intended to apply to the organization of all new counties throughout the state. To sustain such a proviso would limit its uniform operation, and give to one new county a power or privilege which the other new counties were not permitted to have. It may be urged that the power conferred on Kiowa county may be sustained by treating the act as special. To do this would render the act ob-

noxious to that provision of the constitution which requires that no act shall contain more than one subject, which shall be expressed in the title.

It is contended by the defendant that the provisos in the act of 1886 are repugnant to each other, and that the last one must prevail. That contention is not assented to. But for the fact that it destroys the uniform operation of the great body of the act of 1886, the proviso might well stand. Kiowa county, as has been stated, was what is termed "duly organized" on the 27th of March, 1886. Having arrived at the conclusion that the proviso in relation to that county is void, we are confronted with the other proviso, which reads:

"No bonds of any kind shall be issued, by any county, township or school district, within one year after the organization of such county."

All law writers agree that, in the construction of a statute, the intention of the legislature should prevail, if it can be ascertained. All agree that the intent may be gathered from the act itself, and the supreme court of the United States have examined the course of a bill in the legislative body, and previous statutes on the same subject, for the purpose of arriving at that intent.

The defendant insists that the proviso which declares that "no bonds of any kind shall be issued by any county, township or school district, within one year after the organization of such county," does not authorize or warrant a new county to take any of the preliminary steps towards the issuing of bonds until after the expiration of one year after the organization, and that, to give the power to issue bonds, three prerequisites must consecutively follow each other: (1) the resident taxpayers of the county must present the character of petition, described in the law, to the board of commissioners; (2) they must order an election, and that a majority of the votes cast thereat must be in favor of the issue of the bonds; (3) that the board of commissioners make a valid subscription to or for the stock of the company in whose favor the vote was had. These prerequisites are common knowledge, especially by dealers in bonds, and by the members of a legislature; for the courts of every state in the Union, as well as the courts of the United States, have from time to time announced these propositions, in cases where the authority to issue was predicated upon the conditions stated. That this general knowledge exists is evidenced by the proviso which the legislature of Kansas incorporated in the act of 1886 in relation to Kiowa county. It had under consideration a general act in relation to the organization of new counties. It had knowledge of the fact, as its legislation shows, that Kiowa county, or rather its people, were seeking to have a county organization at an early day. It was revising and amending an act in relation to the organization of new counties, in which there was a provision that no bonds should be issued by any new county within one year of its organization. It proposed to, and did, re-enact that proviso; but at the same time it desired to permit the then unorganized county of Kiowa to exercise a function which it was not willing should be exercised by any other new county to be

formed thereafter. That act or thing, which it intended to permit Kiowa county to do, was what? The answer is that it intended to give to that county the privilege, not of issuing bonds within a year of its organization, but to vote for the issue of bonds within that year. If the proviso, as it stood in the act of 1876, and as carried into that of 1886, conferred upon new counties the right or privilege of voting for bonds within the first year of its organization, why was an attempt made, by a separate proviso, to authorize it to do what it is now claimed it might have done without the proviso? The proviso in relation to Kiowa county evinces an intent. The other proviso shows another. The first intent was to allow Kiowa county to vote before the expiration of the probationary year. The other shows an intent that the new counties to be thereafter organized should not have that power. The question of allowing new counties to vote for bonds within the year of minority was presented by the case of Kiowa county, and it is plain, from what was done, that there was no intention of extending a like privilege to other new counties. If it intended to have extended the privilege of voting at an earlier period than one year, it could have made that intent plain by saying that "nothing herein contained shall prevent any county from voting for bonds within a year of its organization." No such language is found, and no such power was intended to be granted.

The view here stated is borne out by subsequent legislation on the same proviso. In 1887 the greed to vote bonds made its appearance before the legislature. The result was that the proviso was amended so as to read:

"No bonds, except for the erection and furnishing of school houses, shall be voted for and issued by any county or township, within one year after the organization of such county."

Here the question of voting for bonds within the year was again up for consideration, and the right was extended, not to counties or townships, but to school districts. If the school districts had the right to vote for bonds, under the act of 1886, within one year after the organization of the county, why is it that, in 1887, those who desired that power for the school districts desired the law amended? If a school district had the power to vote before the expiration of a year, under the act of 1886, the counties and townships had. It must be borne in mind that the new counties, under the law of Kansas, were not clothed with all the powers of the older counties.

The circuit court of appeals for this circuit, in the case of Coffin v. Commissioners of Kearney Co., 6 C. C. A. 288, 57 Fed. 137, had occasion to speak of the powers of the new counties coming into being under the act of 1886, and say:

"The proviso [in the act of 1887] does not, as counsel suppose, impose a limitation upon the exercise of power which becomes vested in a newly-organized county, as soon as commissioners are appointed, but its effect is to prevent such power from being vested until a year after its organization."

If it be true that the power does not vest until a year after the organization, it follows, as night follows day, that there was no power in Kiowa county or its officers to order or hold an election; and, if this be true, the bonds are void.

The supreme court of Kansas, in speaking of the nature and powers possessed by counties during the first year of the organization, say:

"Now, it will be admitted that, when the temporary county officers appointed by the governor have qualified and entered upon the discharge of their duties, the county is organized. But such organization is not a completed organization; or, at least, it is not an organization sufficient for all purposes. At that time the county has no county attorney, no clerk of the district court, no county treasurer, no superintendent, no county surveyor, and no probate judge."

No presumptions can be indulged in favor of such an organization unless it is given in plain and unmistakable language. Having held that the proviso in the act of 1886, which attempted to authorize or permit Kiowa county to vote for bonds before it had been organized one year, is obnoxious to the constitution of the state, where is the power to be found which authorized a vote and subscription at the time these acts were performed? It is urged that the general law authorized counties to make such vote and subscription, and under that the power existed, because the inhibition in the proviso in the act of 1886 only prohibits the issuing, and not the voting, of bonds within the year. To say that such power vested, to the extent of allowing a vote to be taken, within the year, is to accept the theory that the proviso is a limitation, which the circuit court of appeals declares is not true.

It is urged by the plaintiff that the county is estopped, by certain recitals in the bonds, from setting up a defense to these bonds. Recitals as to matters of fact sometimes operate as an estoppel, in the case of innocent purchasers for value; but recitals as to the existence of a law and the power conferred by it, which are false, cannot create an estoppel. The bond recites that it was issued under a certain act, and that the vote and subscription was had under and in pursuance thereof. The circuit court of appeals have decided that that act did not go into effect, as to newly-organized counties, until one year after their organization. In Anthony v. Jasper Co., 101 U. S. 697, the court say:

"Dealers in municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market."

In Dixon Co. v. Field, 111 U. S. 92, 4 Sup. Ct. 315, the question of estoppel by reason of recitals in the bonds was under consideration, and the court say:

"This does not extend to or cover matters of law. All parties are equally bound to know the law, and a certificate reciting the actual facts, and that thereby the bonds were conformable to law, when, judicially speaking, they are not, will not make them so; nor can it work an estoppel upon the county to claim the protection of the law. Otherwise, it would always be in the power of a municipal corporation to which the power was denied to usurp the forbidden authority, by declaring that its assumption was within the law. This would be the clear exercise of legislative power, and would suppose such corporate bodies to be superior to the law itself."

In National Bank of Commerce v. Town of Granada, 4 C. C. A. 212, 54 Fed. 100, the circuit court of appeals for this circuit say:

"It has never yet been held that a false recital in a bond can make that a law which never was law."

The same theory of estoppel now urged was insisted on in Coffin v. Commissioners of Kearney Co., 6 C. C. A. 288, 57 Fed. 137, a case wherein the power of newly-organized counties, under the very act under consideration in this case, was passed upon, and the court say:

"Even if we were able to concede, according to the contention of counsel, that a newly-organized county, in the state of Kansas, is endowed with the power, during the first year of its existence, and by virtue of the appointment and qualification of commissioners, to issue funding bonds, and the proviso is a mere limitation as to time of the mode of exercising the power, still we would not be able to concede the further proposition of counsel that purchasers of bonds issued by such counties are not required to ascertain the age of the county, but may rely upon the recitals which such bonds happen to contain."

And, in the concluding portion of the opinion, this language is found:

"It was at least incumbent on the purchaser of the bonds to ascertain that Kearney county had become a recognized political subdivision of the state. That fact had to be ascertained to enable the bondholder to further ascertain if it had power, under any circumstances, to issue bonds. A casual examination of the record kept in the governor's office would have disclosed the fact that the commissioners were not appointed until April 3, 1888, which was less than four months previous to the day on which the bonds bear date."

Both series of bonds involved in this suit, on their face recite that they were issued under and in pursuance of an act which, it has been seen, was not applicable to a new county, such as the defendant was, and in pursuance of a vote had on the 22d of June, 1886. If the holders of these bonds had examined the record in the executive office, they would have found the commissioners were appointed on the 23d of March, 1886, and that the vote for the issue of the bonds was had in three months thereafter. If they had examined the act regulating the creation of new counties, they would have found, as has the circuit court of appeals, that such counties did not become vested with the general powers conferred by the act recited in the bonds until one year after their organization, and that Kiowa county did not have power to contract for the issue of the bonds in suit.

The bonds issued to the Chicago, Kansas & Nebraska Railway Company contain, among other things, this provision:

"This is one of a series of one hundred and twenty bonds, of like tenor, date, and amount [$1,000 each], numbered from one to one hundred and twenty, inclusive, issued to the Chicago, Kansas & Nebraska Railway Company."

An examination of the appraisement of the taxable property of Kiowa county would have shown that Kiowa county, at the time it contracted to issue the 120 bonds was without authority to issue more than $111,000 of bonds. It appears, from the pleadings, however, that the whole number of bonds have not been issued. If the views expressed in this opinion are correct, it would serve no useful purpose to enter upon a discussion of the subject suggested. That a vote to issue bonds, not taken under the sanction of law authorizing the same, will not confer power to issue bonds, is well settled in George v. Oxford Tp., 16 Kan. 72, and in McClure v. Township of Oxford, 94 U. S. 429.

In conclusion, it may be stated that the power of the defendant county to vote, on the 22d of June, 1886, for the issue of these bonds,

is not free from doubt. On the contrary, the power claimed can only be deduced from the silence of the statute and the absence of negative words. The power to issue the class of bonds in suit must rest on a more firm foundation. Entertaining these views, the demurrer is overruled.