## POST *v.* PULASKI COUNTY.

*(Circuit Court of Appeals, Seventh Circuit.  March 8, 1892.)*

**1. COUNTY BONDS—RECITAL—NOTICE.**
   A recital in county bonds that they are issued "pursuant to an order of the county court" puts all persons dealing in the bonds upon inquiry as to the terms of the order.

**2. SAME—RAILROAD AID BONDS—VALIDITY.**
   Act March 6, 1867, incorporating the C. & V. R. Co., empowered municipal corporations, when authorized by popular vote, to subscribe for stock in the company, and issue bonds in payment therefor. A county agreed, by popular vote, to subscribe for $100,000 of stock, and issue bonds therefor, but before issuance of the bonds the county authorities agreed to sell the stock back to the company in exchange for $5,000 in bonds. In fact, only $95,000 of bonds were issued and delivered to the company, and no stock received by the county. *Held*, that the bonds were void, since the transaction, being a gift and not a subscription, was not authorized by the statute, nor assented to by the popular vote. *Choisser* v. *People*, (Ill. Sup.) 29 N. E. Rep. 546, followed.

**3. SAME—CONSTITUTIONAL LAW.**
    Act Feb. 9, 1869, (3 Priv. Laws 1869, p. 259,) amending the charter of said railroad company, which attempts to validate all contracts between said company and municipalities, whereby the latter agreed to sell to the company at a nominal price the stock for which they had subscribed, has no effect, where the contract was made by the municipal authorities without being submitted to popular vote, as required by law, since the legislature cannot impose an obligation upon a municipality without its consent, legally expressed. _Choisser_ v. _People_, (Ill. Sup.) 29 N. E. Rep. 546, followed.

Error to the Circuit Court of the United States for the Southern District of Illinois.

_Assumpsit_ by Mary E. Post, as administratrix of the estate of A. T. Post, deceased, against the county of Pulaski. Judgment for defendant. Plaintiff brings error. Affirmed.

_Connolly & Mather_ and _John F. Dillon_, for plaintiff in error.

_Saml. P. Wheeler_, (_L. M. Bradley_ and _Brown, Wheeler & Brown_, of counsel,) for defendant in error.

Before GRESHAM, Circuit Judge, and BLODGETT and JENKINS, District Judges.

BLODGETT, District Judge. This is an action of _assumpsit_ upon 196 interest coupons, of $20 each, cut from 30 bonds of the defendant county; said bonds being for the sum of $500 each, of like tenor, all dated October 17, 1872, payable 20 years after date, with interest at the rate of 8 per cent. per annum, payable on the 1st days of January and July in each year, as evidenced by coupons attached; said bonds being part of an issue of 200 bonds, of like tenor and amount, issued by the defendant county in aid of the construction of the Cairo & Vincennes Railroad. Defendant pleaded the general issue, and filed with its plea an affidavit denying the execution by the county of the instruments sued upon. By stipulation in writing between the parties, a jury was waived, and the case tried by the court, who found the issues for the defendant, and entered judgment upon the finding.

The evidence in the bill of exceptions, and the opinion of the court below, which is found in the record, show that the case was heard and considered solely upon the question of the power of the county to issue the bonds from which the coupons in question were cut. The bonds in question each contain the following recital:

"This bond is one of two hundred, of like tenor and amount, of the same issue, and is issued pursuant to an order of the county court of said county, authorized by a majority of the legal votes cast at an election held in said county, pursuant to law, on the 5th day of November, A. D. 1867. This bond is also issued under the provisions of an ' Act to incorporate the Cairo & Vincennes Railroad Company,' approved March 6th, 1867, and under the provisions of an act to amend said act, approved February 9th, 1869; also, under the provisions of an act entitled ' An act to fund and provide for the payment of the railroad debts of counties, townships, cities, and towns,' approved April 16th, 1869, and is in part payment of a subscription to the capital stock of the Cairo & Vincennes Railroad Company, in the total sum of one hundred thousand dollars."

The special statutory authority for the issue of bonds by the county in aid of the railroad named is found in the tenth section of the act of

the general assembly of Illinois, approved March 6, 1867, entitled "An act to incorporate the Cairo & Vincennes Railroad Company," (2 Priv. Laws 1867, p. 561,) as follows:

"The several towns, cities, or counties through or near which said railroad shall pass may subscribe for and take stock in this company, and may issue bonds in payment for such stock of five hundred dollars each, bearing interest at the rate of eight per cent. per annum, or less, payable half-yearly in the city of New York on the 1st days of January and July of each year, said bonds to run not longer than twenty-five years. And a tax of not more than one dollar on each one hundred dollars' worth of taxable property may be levied and collected in such town, city, or county, per annum, to pay the installments on such stock, or to pay the interest and principal of bonds issued in payment for such stock: provided, that no such subscription shall be made, no such bonds shall be issued, and no such tax shall be levied unless a majority of the legal voters of said town, city, or county shall vote for the same at an election to be held under order of the corporate authorities in cases of towns or cities, and of the county court in cases of counties: provided, further, that a majority of legal voters at any such election shall be held as a majority of the legal voters of any such town, city, or county, and the questions of making a subscription, issuing bonds, and levying taxes may be submitted as one question or as separate questions at such election, and either or all of said questions may be submitted to an election at any time, in the discretion of the authorities authorized to call such election."

Power is also given a municipal corporation to issue bonds in payment of subscription to the stock in railroad corporations by an act approved November 6, 1849, entitled "An act supplemental to an act entitled 'An act to provide for a general system of railroad incorporations.'"

Without discussing all the questions made on the argument of the case, we think the record shows one so obvious ground for sustaining the judgment of the court below that no other need be considered. The bonds recite that they are issued "pursuant to an order of the county court of said county, * * * in part payment of a subscription to the capital stock of the Cairo & Vincennes Railroad Company." This recital, that the bonds were issued pursuant to an order of the county court, undoubtedly put all persons dealing in the bonds on inquiry as to the terms of that order. An examination of the records of the county court of the county would have shown, as clearly appears from the proof in this case, that on the 17th day of September, 1867, the court ordered that an election be held in the county, at the various voting precincts, on the 5th day of November, 1867, to vote upon the question of subscribing the sum of $100,000 to the capital stock of the Cairo & Vincennes Railroad Company, and the issue of the bonds of the county in the denominations of $500 each, payable in 20 years, bearing interest at 8 per cent. per annum, payable half-yearly, on the 1st days of January and July in each year, in payment for such stock, and that on the 2d day of December, 1867, the county court entered into a contract with the railroad company, which recites that, at an election held in the county on the 5th day of November, 1867, the county court was authorized to make a subscription of $100,000 to the capital stock of said railroad company, and to pay for said stock in bonds of the county. It

was therefore agreed that the county should sell to the railroad company the $100,000 of stock so to be issued to the county in payment for said bonds for the sum of $5,000 in bonds,—in other words, that the county should give $95,000 of its bonds for $5,000 of stock in the railroad company; and by orders of the county court entered upon their records at the July term, 1870, June term, 1871, and March term, 1872, which in terms purported to extend from time to time the period within which the railroad should be completed, and yet be entitled to receive the bonds, this provision in regard to the sale of the stock to the railroad company was retained in full force. No actual subscription by the county for the stock of the railroad company was made until March 4, 1872, when the county court, for the first time, made a subscription for the $100,000 of the stock of the railroad company; and, in the order making this subscription, it was expressly provided that the subscription should in no way invalidate the contract then in force between the county and the railroad company, by which the capital stock received by the county is sold to the railroad company; and in a subsequent order, entered the same day, in regard to the same subject-matter, is the following paragraph:

"And it is further agreed that upon the completion of said road and the delivery of said bonds, upon the terms and conditions hereinbefore expressed, this county will accept and receive the balance of said sum of $100,000, to-wit, $5,000, due to said company, in full payment for the sum of $100,000 stock in said road, and will waive the actual issue thereof to said county."

There can be no doubt that the legal effect of this contract and the orders of the county court was to donate or give the railroad company $95,000 in the bonds of the county. The county was to receive no stock, but was to give the railroad company $95,000 of its bonds. The election held on the 5th of November, 1867, was to vote upon the question of subscribing for $100,000 of the stock of the company, and issuing the bonds of the county in payment therefor. No special or general statute of the state, then in force, authorized the county to make a donation of its money or bonds in aid of this railroad company. That there is an essential difference between a proposition to subscribe for stock in a railroad company, and thereby become a stockholder, with a right to share in the profits of its business and have a voice in the management and policy of the company, and a proposition to make a donation of bonds or money to the railroad company, is too plain to require argument or the citation of authority. The order of the county court, making the subscription to the stock and directing the issue of the bonds, and which must be read into each bond and coupon, shows in unmistakable language, so plain that it requires no technical skill to construe or apply it, that the bonds were issued as a donation to the railroad company, and not in payment of a subscription to its stock.

The case of *Choisser* v. *People*, 29 N. E. Rep. 546, lately decided by the supreme court of Illinois,—the manuscript opinion of which has been handed us since the argument of this case,—is almost identical in its facts, as far as the questions now under consideration are concerned,

with this case. It involved an issue of bonds by another county (Saline) in aid of the construction of the same railroad, and in pursuance of the same section of the charter of the railroad company. An agreement between that county and the railroad company was made after the vote authorizing the subscription, in substantially the same terms as was made in the case now under consideration. And in that case the court, speaking by Mr. Justice BAILEY, says in regard to this contract:

"That in its consummation, if not in its inception, the transaction was a donation, pure and simple, is too plain to admit of serious controversy. In the beginning, and until the election was had, the guise of a subscription was resorted to, so as to bring the municipal aid sought to be obtained apparently, at least, within the power conferred upon the county by the tenth section of the railroad company's charter. But, when viewed in the light of the interpretation put upon the transaction by the subsequent acts of the parties, it appears too transparent to mislead. The bonds being essentially a donation, it was not within the power of the county court to issue them, and they must therefore be held to be *ultra vires* and void."

It is further urged in behalf of the appellant that the action of the county court in making the contract in question with the railroad company was validated by the third section of "An act to amend an act entitled 'An act to incorporate the Cairo & Vincennes Railroad Company,'" approved February 9, 1869, (3 Priv. Laws Ill. 1869, p. 259.) This section provides:—

"That all contracts made by towns, cities, and counties, into, through, or near which the Cairo & Vincennes Railroad shall run, whereby, as an inducement for the construction of said railroad, such towns, cities, and counties agreed, upon the completion of certain portions of said railroad, to sell to the said company, at a nominal price, the stock of said company, for which such towns, cities, or counties, by a vote of their electors, had theretofore subscribed and agreed to issue bonds in payment therefor, thereby, in effect, agreeing to make a donation to said company of certain amounts of the bonds of such towns, cities, or counties, as an inducement for the construction of said railroad, are hereby declared to be valid and binding upon such towns, cities, and counties, and shall be carried into effect, in good faith, by the same; and all orders for and notices of elections, and elections and returns of such elections, in respect to such subscriptions of stock to said company, in any such towns, cities, and counties, are hereby declared to be valid and binding upon such towns, cities, or counties."

In reference to the validity of this statute, we cannot express our own views more clearly or forcibly than by quoting from the opinion of the learned judge in the case just referred to, in which he says:

" The only proposition which had been submitted to the vote of the people of the county, and the only proposition which, under existing laws, the county court had power to submit to them, was that of making a subscription to the capital stock of the railroad company, the stock to be received as the consideration, and, presumably, the equivalent, for the county bonds to be issued in pursuance of the subscription. The proposition to donate $95,000 in county bonds to said railroad company was never submitted to the people of said county, was never voted upon by them, and could not, under then existing laws, have been submitted to such vote. The subsequent contract entered into by the county court, to sell back the stock subscribed for for a nominal consideration, so as to effectually transmute the proposition to subscribe $100-

000 to the capital stock of said company, to which the people of the county had given their assent, into a proposition to donate to the railroad company $95,000 of county bonds, to which the people of the county had not, and could not have, given their assent, was clearly void, so as to confer no rights and impose no obligations. * * * In the present case the amendatory act of 1869, if effectual at all, can be held to operate only by way of validating a contract for a donation which, by reason of want of power, as well as the absence of either an intention or opportunity on the part of the legal voters of the county to give their assent to it, was *ultra vires* and void. Declaring such void contract to be valid and binding, and providing that it should be carried into effect in good faith, as said amendatory act undertook to do, was an attempt to impose upon the county an obligation in aid of the railroad without its own consent, expressed in any legal form."

For these reasons, we are of opinion that whoever dealt in those bonds is chargeable with notice from the records of the county court of Pulaski county that the bonds were donated to the railroad company, and were not issued by the county in payment of a subscription to the stock of the company. The recitals in the bonds that they were issued pursuant to an order of the county court put whoever should come into the possession of those bonds, even if purchased for value upon the open market, upon inquiry as to the terms of that order; and it needs no judicial interpretation of the contract referred to in the orders of the county court, to see that the county did not, in legal effect, subscribe for the stock of this railroad, but agreed to donate, and did donate, its bonds in aid of this railroad. The decree of the court below is therefore affirmed.