BOARD OF COM'RS OF HASKELL COUNTY, KAN., v. NATIONAL LIFE INS. CO. OF MONTPELIER, VT.

(Circuit Court of Appeals, Eighth Circuit. October 24, 1898.)

No. 1,055.

1. MUNICIPAL BONDS—ESTOPPEL BY RECITALS—REFUNDING BONDS.

A recital in county bonds that they were issued in accordance with the provisions of a statute authorizing counties to refund their indebtedness imports that they were issued in pursuance of a lawful and proper reso-

lution, and of honest and just action on the part of the county board, under that statute, and also that the obligations refunded were such as could lawfully be refunded thereunder. It relieves the innocent purchaser of all inquiry, notice, or knowledge of the actual action and record of the board, and estops the county from denying that proper action was taken and that a lawful resolution was passed.

**2.** SAME—RECITALS IN RECORD.

A municipal corporation cannot make a false certificate on the face of its negotiable bonds, or a false record that they are issued in accordance with the law for a lawful purpose, and then defeat a recovery upon them by an innocent purchaser, who has bought in reliance upon the certificate or record, by proof that they were in fact issued for an unlawful purpose.

**3.** SAME—CONSTRUCTION OF STATUTE—REFUNDING BONDS.

Laws Kan. 1879, c. 50, as construed by the supreme court of that state, which construction is binding on the federal courts, authorizes the commissioners of a county to refund with negotiable bonds all indebtedness of the county that was due at the time of its passage, or that might at any time become due.

**4.** CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACTS—REFUNDING MUNICIPAL BONDS.

Bonds issued by the board of commissioners of a county of Kansas, which, under the constitution and laws of that state, is the only body which can exercise the powers of, or make a contract for, the county as a body politic or corporate, although they may be issued upon a petition of the taxpayers, or on a vote of the electors of the county, are contracts of the county only, and not of the petitioners, taxpayers, or voters, who are not bound by the obligation thereof; hence a change in the terms of such contracts by the issuance of refunding bonds, under proper legislative authority, does not impair the obligation of any contract made by the taxpayers or electors.

In Error to the Circuit Court of the United States for the District of Kansas.

S. S. Ashbaugh, for plaintiff in error.

O. H. Bentley and Rudolph Hatfield, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge. This is an action upon coupons cut from refunding bonds issued by the county of Haskell, in the state of Kansas, under chapter 50 of the Laws of that state of 1879 (Gen. St. Kan. 1889, par. 464). The court below sustained a demurrer to the answer of the plaintiff in error, and rendered a judgment against the county. The answer contains the same defenses interposed to the bonds issued under chapter 50 of the Laws of 1879, in the case of Board of Com'rs of Seward Co. v. Ætna Life Ins. Co., 90 Fed. 222. An attempt is made to distinguish from the defenses in that case one which is interposed in this case to the coupons cut from 10 of the bonds here in question. This defense is that these 10 bonds, which will fall due in 1918, and which were issued to refund bonds due in 1909, which had been executed, but never delivered by the board of county commissioners of Haskell county, pursuant to a vote of the electors of the county under an unconstitutional law, were void, because the original bonds were so, and because the issue of the refunding bonds, with different terms and times of payment from those

contained in the original bonds, impaired the obligations of the contracts which the electors had assumed by their vote in favor of the latter. Among the many interesting acts passed by the legislature of Kansas to authorize the issue of bonds was one entitled "An act authorizing a bounty for breaking sod in Haskell county, Kansas, and to issue the bonds of said county to provide funds therefor." This act provided that, upon a favorable vote of the electors of that county, the board of county commissioners might issue 10 bonds of the county, of the denomination of $1,000 each, due January 1, 1909, and might use the proceeds thereof to pay the residents and freeholders of the county a bounty of one dollar per acre for breaking sod. Laws Kan. 1889, c. 154. The people voted, as usual, to issue the bonds; and in April, 1889, the board executed them, and placed them in the hands of its agent to sell, but he never found a purchaser. At a regular meeting of the board held on June 4, 1889, it made a record of an offer from W. W. Hetherington, of Atchison, Kan., to refund the bonds of the county, numbered from 1 to 10, inclusive, for the sum of $1,000 each, dated April 13, 1889, and payable January 1, 1909, upon the delivery to him of the refunding bonds of the county of like denominations, and of a resolution of the board "that the present ten thousand dollars outstanding bonds of Haskell county, issued April 13, 1889, under the provisions of the Laws of Kansas, interest payable semiannually, and due January 1, 1909, the same now being the valid bonded obligation of this county, be refunded by the issuance of ten bonds of $1,000 each, numbered from 1 to 10 inclusive; to be dated June 4, 1889, and mature fully July 1, 1918, with coupons attached for semiannual payments of interest at 6 per cent. per annum." It is conceded that the invalidity of the original bonds would be no defense to the refunding bonds were it not for this record of June 4, 1889; but it is contended that this was sufficient to put every purchaser upon inquiry, and to charge him with notice that the original bonds represented no debt.

There are at least two reasons why this position is untenable. In the first place, each of the refunding bonds contains this recital:

"This bond is issued in accordance with the provisions of an act of the legislature of the state of Kansas approved March 8, A. D. 1879, entitled 'An act to enable counties, municipal corporations, the board of education of any city, and school districts to refund their indebtedness.' We hereby certify that all and singular the provisions of the above law have been fully complied with in issuing this bond, and all preliminary steps therein required have been taken, and all conditions precedent and subsequent there provided for have been fully met and complied with."

It is true that in National Bank of Commerce v. Town of Granada, 54 Fed. 100, 4 C. C. A. 212, and 10 U. S. App. 692, and in Hinkley v. City of Arkansas City, 69 Fed. 768, 773, 16 C. C. A. 395, 400, and 32 U. S. App. 640, 650, this court expressed the view that such a recital would not estop a municipality from showing that no proper ordinance had been passed or proceedings taken by the legislative body of the municipality authorizing the issue of the bonds; but, since those decisions were rendered, the exact question whether or not the recital in a series of bonds that they were issued "in pursuance of an act of the legislature of the state of Indiana and ordinances of the city council of

said city, passed in pursuance thereof," put a purchaser upon inquiry as to the terms of the ordinances under which the bonds were issued, was certified to the supreme court by the circuit court of appeals of the Seventh circuit, and that court answered that it did not. In concluding the discussion of that question, the supreme court said:

"As, therefore, the recitals in the bonds import compliance with the city's charter, purchasers for value having no notice of the nonperformance of the conditions precedent were not bound to go behind the statute conferring the power to subscribe, and to ascertain, by an examination of the ordinances and records of the city council, whether those conditions had, in fact, been performed. With such recitals before them, they had the right to assume that the circumstances existed which authorized the city to exercise the authority given by the legislature." Evansville v. Dennett, 161 U. S. 434, 439, 443, 16 Sup. Ct. 613.

The decision of that court is the law of this land, and the duty of this court will be performed when it enforces and applies it. The result is that the recital in the bonds before us that they were issued in accordance with the provisions of the statute imports that they were issued in pursuance of a lawful and proper resolution, and of honest and just action on the part of the board of county commissioners under that statute. It relieves the innocent purchaser of all inquiry, notice, and knowledge of the actual action and record of the board, and estops the county from denying that proper action was taken, and that a lawful resolution was passed. Wesson v. Saline Co., 73 Fed. 917, 919, 20 C. C. A. 227, 229, and 34 U. S. App. 680, 684; Rathbone v. Board, 83 Fed. 125, 131, 27 C. C. A. 477, 483, and 49 U. S. App. 577, 589; City of South St. Paul v. Lamprecht Bros. Co., 31 C. C. A. 585, 88 Fed. 449.

In the second place, if the purchaser had examined the record of the proceedings of the board on June 4, 1889, upon which the issue of these bonds was based, he would have found nothing there to inform him that the original bonds were issued under an unconstitutional law, or that they were invalid. That record nowhere refers to the act under which those bonds were issued, nowhere gives notice that they were sod bonds, nowhere challenges their validity, but on the contrary, in the refunding resolution of the board, describes them by number, amount, and date, and then reads, "the same being the valid bonded obligation of this county." The case presents the old question we have answered in the negative so many times: May a municipal corporation make a false certificate on the face of its negotiable bonds, or a false record that they were issued in accordance with the law for a lawful purpose, and then defeat a recovery upon them by an innocent purchaser, who has bought in reliance upon the certificate or record, by proof that they were in fact issued for an unlawful purpose? West Plains Tp. v. Sage, 69 Fed. 943, 947, 16 C. C. A. 553, 557, and 32 U. S. App. 725, 734; City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272, 277.

But it is said that these bonds are void: (1) Because the board of county commissioners had authority, under the act of 1879, to refund matured and maturing indebtedness only, and in 1889 the bonds refunded, which did not fall due until 1909, were neither; and (2) because the issue by the board without a vote of the electors of these

refunding bonds, which did not fall due until 1918, in exchange for those due in 1909, impaired the obligations of the contracts by which the electors of the county were bound by their vote in favor of the issue of the latter.   The certificate on the face of the bonds is equally fatal to this contention.   The certificate that the bonds were issued in accordance with the provisions of the act of 1879 imports, not only that the debt refunded was a valid and just obligation of the county, but also that it was such an obligation as could be lawfully refunded under that act.   Moreover, the first ground on which this objection rests is untenable, because, according to the construction given to chapter 50 of the Laws of 1879 by the supreme court of Kansas, which must prevail here (Madden v. County of Lancaster, 65 Fed. 188, 192, 12 C. C. A. 566, 570, and 27 U. S. App. 528, 535), that chapter authorized the board of county commissioners to refund with negotiable bonds all indebtedness of the county that was due at the time of its passage, or that might at any time become due.   Carpenter v. Hindman, 32 Kan. 601, 606, 5 Pac. 165.

The theory that the issue by the board of county commissioners without a vote of the electors of bonds in exchange for those payable at a different time and on different terms, which were authorized by a vote of those electors, is an impairment of the obligations of the contracts of the taxpayers, is unsound.   A county bond issued by .the board of county commissioners of a county, by the only body that, under the constitution and laws of the state of Kansas, can make a contract for, or exercise the powers of, the county as a body politic or corporate (Const. Kan. art. 2, § 21; Gen. St. 1889, par. 1613), although it may be issued on the petition of the taxpayers or on a vote of the electors of the county, is the contract of the county only, and is not the contract of the petitioners, of the voters, or of the taxpayers.   A change in the terms of such a contract, an abrogation thereof, the making of a new contract, may modify, impair, or create an obligation of the county; but it cannot be said to impair an obligation of any contract of the petitioners, electors, or taxpayers, because they are not bound by the obligations of such contracts.   Their property is liable to taxation to pay the obligations of the county, but there their liability ends.   No action can be maintained against them upon the bonds of the county, and they are at liberty to sell their property at any time, and to remove beyond its limits free from all liability for its contracts, because they are in no way bound by the obligations thereof.   The county alone stands charged with the obligations of its contracts, whether they are made with or without a petition of its taxpayers or a vote of its electors; and hence its board of county commissioners, with the consent of the other parties to the contracts, and with the proper legislative authority, may lawfully abrogate, modify, or exchange them.   The defenses pleaded in this action cannot be successfully distinguished from those considered in Board of Com'rs of Seward Co. v. Ætna Life Ins. Co.; and, upon the authority of the opinion in that case and of the cases cited therein, the judgment below is affirmed.