[No. 5068.]
[No. 2634 C. A.]

THE CITY OF CRIPPLE CREEK v. ADAMS.

1. Cities and Towns—Establishment of Water Works—Issuance of Bonds.

2 Mills' Ann. Stats., § 4403, subd. 6, empowers towns and cities to contract an indebtedness for the purpose of purchasing or constructing water works for fire and domestic purposes, and for the purpose of constructing or purchasing canals or some suitable system of supplying water for irrigation, and when considered in connection with subds. 70, 72 and 73, of the same section, and with 3 Mills' (Rev.), §§4430a, 4430c, relating to the condemnation of property, the power to construct and purchase reservoirs, to provide pumps, conducting pipes and ditches, to take water from the public streams, and to purchase water and water rights, it gives authority to such municipalities to issue bonds for the purchase of water rights to secure water for its inhabitants.—P. 325.

2. Same—Bonds—Bona Fide Purchasers—Failure of Consideration.

Where a municipal ordinance authorizes the issuance of bonds, and stated that they were to be issued in payment of

water rights and the manner in which they should be authenticated; and the bonds thus issued contained an unconditional promise to pay a specific sum at a definite date, and the municipality had the power to issue them; held, that the failure of consideration of the bonds by reason of the failure of the title to the water rights, did not affect the rights of the purchaser for value before maturity without notice.—P. 326.

3.   Same—Bonds.

Municipal bonds are clothed with. all the attributes of negotiable or commercial paper passed by delivery or endorsement, and are not subject to equities (where the power to issue them exists) in the hands of a holder for value before due without notice, and this is a sufficient reason for precluding the defense of a failure of consideration.   And a further reason is, that the recital of facts in such bonds, to wit: that they have been issued for a valuable consideration and that all actions and things required to be done, precedent to and in the issue of such bonds to render the same lawful and valid, have been properly· done, is no where contradicted by public record, with notice of which the public is charged.—P. 326.

4.   Same—Issuance of Bonds—Validity.

Bonds issued by a municipality for the purchase of water rights, for the purpose of supplying water to its inhabitants, are not within the provisions of 2 Mills' Ann. Stats., §§ 4447, 4449, requiring an appropriation ordinance to be passed before the bonds are issued.—P. 327.

5.   Same—Bonds—Coupons—Interest After Maturity—Compound Interest.

Under § 2252, Mills' Ann. Stats., allowing interest on moneys due on any instrument in writing, unpaid coupons on municipal bonds draw interest after maturity, and the rule that compound interest cannot be recovered in this state does not apply.—P. 327.

*Error to the District Court of Teller County.*
*Hon. Louis W. Cunningham, Judge.*

Action by Fred C. Adams against the city of Cripple Creek.   From a judgment for plaintiff, defendant brings error.                    *Affirmed.*

Mr. H. H. CLARK, for plaintiff in error.

Mr. CHARLES M. BROWN, for defendant in error.

Mr. JUSTICE GUNTER delivered the opinion of the court:

This was an action on certain coupons belonging to bonds issued by defendant city. There was a judgment against the defendant, and it brings the case here for review. The case was submitted below upon the pleadings and an agreed statement of the facts. Therefrom the pertinent facts appear to have been as follows:

In July, 1895, an ordinance entitled, "An ordinance to provide for the issue of bonds for the purpose of supplying water to the town of Cripple Creek, and to provide for the levy of a tax sufficient to pay the annual interest thereon and extinguish the principal thereof," was passed by the board of trustees of defendant city, then the town of Cripple Creek. The ordinance authorized the issuance of bonds in the principal sum of $50,000.00 in the name of the town of Cripple Creek, for the purpose of purchasing water rights, and securing to the inhabitants of said town water for their use. It further provided that "Said bonds shall state on the face thereof the title of this ordinance and the title of the general statute of Colorado in pursuance of which the same are issued, and the corporate seal of the town shall be affixed thereto by the mayor, and they shall be signed by the mayor and town treasurer and attested by the town clerk."

The ordinance, in all particulars, it is admitted, complied with the statute. It provided, inter alia, for the levy of special taxes sufficient to pay the annual interest on the bonds and to create a sinking fund for the payment of their principal at maturity, and that it should be irrepealable until the indebtedness provided for therein should be fully paid. Pursuant to this ordinance, the town authorities issued bonds in payment for water rights to be used for the purpose

stated in the ordinance—that is, for supplying the inhabitants of said town with water. These bonds, except as to the number of the bond, are identical in form. Material parts of the bonds are the following:

"The town of Cripple Creek   *   *   *   for value received   *   *   *   hereby promises to pay to bearer, two hundred and fifty dollars   *   *   *   on the third day of July, 1901; but said town of Cripple Creek reserves the right to pay the same at any time after the third day of July, 1900, with interest thereon at the rate of eight per cent. per annum, payable semi-annually   *   *   *  "

The bond contains this recital:

"This bond is one of a series of bonds of like tenor and date, which the said town of Cripple Creek has issued for the purpose of purchasing water rights necessary to supply said town with water, in pursuance of an ordinance of said town of Cripple Creek duly and in due time, form and manner adopted, published and made a law of the said town, entitled, 'An ordinance to provide for the issue of bonds for the purpose of supplying water to the town of Cripple Creek, and to provide for the levy of a tax, sufficient to pay the annual interest thereon and extinguish the principal thereof, and under, by virtue of, and in accordance and in full and strict compliance with, the provisions of an act of the general assembly of the state of Colorado entitled "An act in relation to municipal corporations," approved April 4th, A. D. 1877, as amended by the acts of the said general assembly approved March 2, A. D. 1887, and April 6, A. D. 1891, and it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuing of this bond, to render the same lawful and valid, have been properly done, happened and performed in regular and in due time, form and manner as provided by

law. * * * In testimony whereof, the said town of Cripple Creek has caused this bond to be sealed by its corporate seal, signed by its mayor, attested by its clerk, and countersigned by its treasurer, this 10th day of October, A. D. 1895.

Attest:

J. K. Hurd,           Hugh R. Steele,
     Town Clerk.                  Mayor.

Countersigned:

(seal)            D. C. Weyland,
               Town Treasurer.' "

Coupons were attached to the bonds, all of which were in the following form:

"$10.00

On the third day of January, A. D. 1896, the town of Cripple Creek, in the county of El Paso and state of Colorado, will pay the ten dollars, in gold coin, at the office of its treasurer in Cripple Creek, or at the Chemical National Bank of and in the city, county and state of New York, U. S. A., at the option of the holder, being six months' interest on water bond.               D. C. Weyland,
                 Town Treasurer."

Ten of these bonds and the coupons belonging thereto were purchased by plaintiff for value and without notice or knowledge of any alleged infirmity therein before the failure of the consideration therefor hereinafter mentioned.

After the purchase of the bonds and coupons by plaintiff, the title to the water rights, in consideration of which they were issued, failed. It is not claimed that any actual fraud attended the transaction. The coupons so purchased are those upon which the judgment below was entered.

It is contended by the defendant that such judgment should be reversed, and the grounds of such contention will be considered in the order presented in the briefs.

1.  It is contended that the legislature has not conferred upon towns or cities the power of incurring a bonded indebtedness for the purpose of purchasing water rights, that the bonds in this instance were issued for such purpose, and that such infirmity is apparent on the face of the bonds.

Section 4403, subdivision 6, 2 Mills' Ann. Stats., empowers towns and cities to contract an indebtedness on behalf of the city and upon the credit thereof by borrowing money or issuing bonds of the city for the purpose of .purchasing or constructing water works for fire and domestic purposes, and for the purpose of the construction or purchase of a canal, or canals, or some suitable system of supplying water for irrigation in the city or town. As incidental to this power, and to make it effective, the city has, by express legislative enactment, the right of condemnation; the power to construct and purchase reservoirs; the power to provide pumps and conducting pipes and ditches; the power to take water from the public streams of the state, and the power to purchase water and water rights for the purpose of supplying themselves with water.—2 Mills' Ann. Stats., § 4403, subdivisions 70, 72 and 73. Also, §§ 4440a, -b and -c, 3 Mills' Ann. Stats., Revised Supplement.

The legislature, when it gave the municipalities of this state power to purchase or construct a system of water works, undoubtedly intended to give them every power necessary to effectuate such general power. We judicially know that, in many instances, this general power would amount to nothing unless there went with it the power to purchase water rights of earlier priorities than the city could acquire by

diversion and appropriation. We think the town of Cripple Creek had authority under said section 4403 to issue bonds for the purchase of water rights; therefore, that such recitals in the bonds were not fatal to the bonds or coupons issued and attached thereto.

2. It is contended that the failure of consideration for the bonds, by reason of the failure of title to the water rights, in consideration of which they were issued, is fatal to the bonds.

The town of Cripple Creek authorized the issuance of these bonds, stated the consideration upon which they were to be issued—that is, in payment of water rights—and stated how the bonds should be authenticated—in other words, by the ordinance pursuant to which the bonds were issued. The town of Cripple Creek authorized the issuance of the bonds, and left to the board of trustees to determine the existence and sufficiency of the consideration for which the bonds should issue. It further told the public, by this ordinance, when it could put faith in the bonds—that is, when they should be authenticated by the signature of the mayor, clerk and treasurer. The bonds, when issued, were an unconditional promise to pay a certain sum of money at a definite time. The coupons attached thereto were of like effect. The city had the power to issue them. Before the maturity of the bonds, or coupons, they were purchased by plaintiff for a valuable consideration, and without notice or knowledge of the infirmity therein.

Municipal bonds are clothed with all the attributes of negotiable or commercial paper, pass by delivery or endorsement, and are not subject to equities (where the power to issue them exists) in the hands of holder for value, before due, without notice.

—Dillon's Municipal Corporations, vol. 1 (3d ed.), § 486.

"Such securities are made to raise money by their sale, and this object would be defeated if they were subject to equities (where the power to issue exists) in the hands of *bona fide* holders."—*Id.*, and authorities there cited.

This was a sufficient reason for precluding the defense of a failure of consideration as against the bonds. A further reason is the recital of facts in the bonds. The recital in the bonds that they have been issued for a valuable consideration was purely as to a matter of fact, and the recital, "And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issue of this bond to render the same lawful and valid have been properly done, happened and performed in regular and due time, form and manner as provided by law," when applied to the matter of consideration for the bonds, was purely as to a matter of fact, and such recital as to such matter of fact is nowhere contradicted by a public record with notice of which the public is charged.—*Chaffee County v. Potter*, 142 U. S. 355.

3. It is next contended that no appropriation ordinance had been passed before the bonds were issued, as required by sections 4447 and 4449, 2 Mills' Ann. Stats. The bonds and coupons involved are not within such statutes.—*Leadville Illuminating Gas Company v. The City of Leadville*, 9 Colo. App. 400, 402-3.

4. The next contention made is, that interest should not have been allowed upon the coupons after maturity. This exact question is ruled in *Lake County v. Linn*, 29 Colorado 446, 459, it being there held that the rule in this state that compound interest may not be recovered does not apply to unpaid

coupons belonging to municipal bonds, and that such coupons, under section 2252, Mills' Ann. Stats., draw interest after maturity.

The judgment below should be affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE MAXWELL concurring.