[No. 7951.]

## HAYDEN v. TOWN OF AURORA.

1. MUNICIPAL BONDS—*Bona Fide Purchasers,* may rely upon the recitals thereof. (401)

2. ESTOPPEL—*By Conduct.* A municipal corporation issuing negotiable bonds for the purchase of water works, reciting full compliance with statutory requirements, will not be heard, as against a *bona fide* purchaser thereof, to deny that the ordinance authorizing the purchase was duly published. (401)

*Error to the Court of Appeals.*

Mr. HUGH McLEAN, Mr. RODNEY J. BARDWELL and Mr. EDGAR McCOMB, for plaintiff in error.

Mr. WILLIAM A. BRYANS, for defendant in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The Town of Fletcher, now Aurora, on July 1st, 1901, issued its 150 bonds for $1,000 each, for the purchase of a water works. The ordinance pursuant to which these bonds were issued was numbered 10. This suit is to recover upon forty one of them. The only defense upon which proof was offered, or upon which reliance is had by the town in the present record, is that the ordinance in question was never published in a newspaper as required by law, or at all, and is therefore of no validity. To the defense the plaintiff, claiming to be a holder for value before maturity without knowledge or notice of any defect in the ordinance, interposed a plea of estoppel, because of the recital in and certificate to the bonds. Trial was had to the court, which made special findings of fact as follows:

"First: That the newspaper, the Denver Times, was of general circulation in said town at the time of the passage of Ordinance No. 10, shown in the record, and that said Ordinance No. 10 was never published in said newspaper or any other newspaper published in or of general circulation in said town.

"Second: That the plaintiff is a *bona fide* holder of the bonds in suit, and purchased them in the usual course of business for value before maturity, in June, 1906, without notice of any defense.

"Third: That the defendant town, from the year 1891 to about the year 1901, annually passed an ordinance levying a tax for the purpose of paying interest on the bonds in controversy, in accordance with said Ordinance No. 10, and with the pro-

ceeds of such tax paid interest coupons on the bonds in controversy herein for the years 1893, 1894, 1895 and 1896."

On these findings judgment was accordingly rendered, in favor of the plaintiff and against the town in the sum of $74,449.00. Upon review the Court of Appeals reversed that judgment, 23 Colorado Appeals, 1. To review the latter judgment plaintiff brings the case here on error.

The issues are comparatively simple, but involve vital questions of law, relative to the rights of innocent purchasers of municipal bonds. While the plaintiff in error relies upon a number of propositions for a reversal of the judgment of the Court of Appeals, and the affirmance of the judgment of the District Court, in our view but one question, as hereinafter noted, need be considered or determined, that being conclusive of the entire controversy.

In section 6525, subdivision 6, R. S. 1908, is found the basic authority giving power to cities and towns to issue bonds for the construction of water works, which, so far as it relates to the matter under consideration, reads as follows:

"Sixth.—To contract an indebtedness on behalf of the city or town and upon the credit thereof, by borrowing money or issuing the bonds of the city or town, for the following purposes, to-wit: * * * for the purpose of the purchase or construction of water works for fire and domestic purposes; * * * and no loan for any purpose shall be made, except it be by ordinance, which shall be irrepealable until the indebtedness therein provided for shall be fully paid, specifying the purpose to which the funds to be raised shall be applied, and providing for the levying of a tax not exceeding, etc. * * *; but no such debt shall be created, 'except the supplying of the city or town with water,' unless the question of incurring the same shall, at a regular election of officers for the city or town, be submitted to a vote of such qualified electors of the city or town as shall, etc. * * *"

The statutes of this state provide that the mayor shall preside at all meetings of the board of trustees, and that the clerk shall make a true and accurate record of all the proceedings, rules or ordinances made, adopted and passed by the board, § 6581, R. S. 1908; that all ordinances shall be published in the manner specified in the statutes and shall not take effect or be in force until the expiration of five days after such publication; that as soon as may be after their passage they shall be "recorded in the book kept for that purpose and be authenticated by the signature of the presiding officer of the council or board of trustees and the clerk"; and that the book of ordinances herein provided for shall be taken and considered in all courts of this state as *prima facie* evidence that such ordinances have been published as provided by law, § 6673, R. S. 1908.

Recorded in the ordinance book of the town, duly attested by the mayor and recorder, under a heading which reads as follows: "Public notice is hereby given to all parties concerned that the following ordinances have been passed by the board of trustees of the Town of Fletcher at the dates specified, and are now in effect, having been published as by law required," is found the ordinance which provides for the purchase of a water plant and the issuance of the bonds in question in payment. This ordinance describes the property to be purchased, provides for the issuance of the bonds, levies a tax for the purpose of payment to be held and used for no other purpose, with a provision for the gradual retirement of the bonds after five years; and it then declares that the ordinance shall be irrepealable until the indebtedness is fully discharged. The record upon this matter is absolutely clear. Even if a prospective purchaser, in an endeavor to satisfy himself as to the regularity of these bonds, out of an abundance of caution, examined the records, nothing would have been discovered to create suspicion. An ordinance would have been found providing for the issuance of the bonds, duly recorded in the ordinance book, authenticated by the

proper authorities, under a heading which gave express notice that it had been published according to law.

Such being the statutory provisions, and such the action taken thereunder by the town trustees in the passage of the ordinance under which the bonds were issued, we now note the sweeping character of the recital in the body of the bonds, and the certificate of the town officers to them, as follows:

"This bond is one of a series of one hundred and fifty bonds of like tenor and date, numbered from No. 1 to No. 150, both numbers inclusive, and amounting in the aggregate to one hundred and fifty thousand dollars, which have been issued in pursuance of an ordinance of the Town of Fletcher irrepealable until the payment of these bonds, passed by the Board of Trustees of said town on the eighth day of June, 1891, entitled 'An ordinance in relation to Water Works Bonds,' and also under and by virtue of and in full compliance with an act of the General Assembly of the State of Colorado, entitled 'An act in relation to Municipal Corporations' approved April 4th, 1877, and an act amendatory thereof approved March 2nd, 1887."

The certificate thereto reads thus:

"And it is hereby certified that this issue of bonds is for the purpose of purchasing Water Works for Fire and Domestic purposes, and further that all the provisions of said ordinance and said act have been complied with and that all acts, conditions and things, requisite to be done precedent to, and in the issuing of said bonds, have been done, happened and performed, in regular and due form as required by law."

By section 7 of the ordinance it was provided that "the mayor and other officers of the Town of Fletcher are hereby directed and instructed to issue said bonds in the name of the town, and to carry out the terms and provisions of the ordinance." The bonds were signed by the mayor, attested by the town recorder under the corporate seal, and countersigned by the town treasurer. The signatures appearing upon the bonds were

shown to be the genuine signatures of the persons acting as mayor, recorder and treasurer of the town. The record shows that these bonds contained not only the broad recitals of full compliance with the requirements of the ordinance and statutes in that behalf, but that they contained the full text of the ordinance itself, and of the statute which authorized the town to issue them. The record further discloses that annually for ten years the town levied a tax to pay the interest on these bonds, and for four years actually paid it. This shows conclusively that the effort to repudiate is purely an afterthought, and that for years the bonds were accepted and treated, without question, as just and binding obligations.

Assuming, as we are bound to do, for the court below so found and the evidence warrants no other finding, that the plaintiff in error is an innocent purchaser for value before maturity, we proceed to a consideration of the law applicable to the only question which need be considered in the case, namely, is the town estopped by the recital in the bonds, and the certificate thereto, to deny that the ordinance in question was published as required by law?

In the opinion in this case reversing the judgment of the trial court, the Court of Appeals held that the recital in the bonds and the certificate thereto did not estop the town from denying that there had been a publication of the ordinance authorizing the officers to issue them. That conclusion was reached on the authority of *National Bank of Commerce v. Town of Granada*, 54 Fed. 100, 4 C. C. A. 212, a case which had already been overruled in *Evansville v. Dennett*, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760; *Board of County Com'rs of Haskell County v. National Life Insurance Co.*, 90 Fed. 228, 32 C. C. A. 591; *Hughes County v. Livingston*, 104 Fed. 306, 43 C. C. A. 541, and *Fairfield v. Rural Independent School District*, 116 Fed. 838, 54 C. C. A. 342. Our Court of Appeals, being of opinion that these opinions had not thus affected the decision in the *Granada* case, applied the doctrine of that case as above indicated, thus falling

into the fundamental error of failing to distinguish between cases where there is a total lack of authority to issue bonds under any circumstances, and cases like this, where there is a clear grant of power to issue them upon compliance with certain precedent conditions, such compliance depending wholly upon the action of the trustees and general officers of the town.

Since the rendition of the decision in this case by our Court of Appeals, the United States Circuit Court of Appeals of the Eighth District, in two cases, *Town of Aurora v. Gates,* and *Town of Aurora v. Wilder,* reported in 208 Fed. Rep. 101, 125 C. C. A. 329, unanimously affirmed judgments against the town on bonds of the identical issue here in suit. The issues in those cases were precisely the same as here. Some of the same bonds were sued upon, the plaintiffs in both cases, like the present plaintiff, were *bona fide* purchasers for value before maturity, and the same defense was presented, namely, failure of the town to publish the ordinance in a newspaper as required by law, from which failure it is urged the invalidity of the bonds necessarily resulted, the respective parties being represented by the same counsel, and the same arguments being urged. In the opinion in those cases the Circuit Court of Appeals flatly denied the correctness of the contention of the town, declaring it to have been estopped by the recital in and the certificate to the bonds, and upheld their validity; and further it was held that as early as 1895, in *Evansville v. Dennett, supra,* the decision in the *Granada* case had been overruled, and likewise that in numerous decisions of that court since the decision in the *Dennett* case had the *Granada* case been discredited, notably in *Board of County Com'rs of Haskell County v. National Life Ins. Co., supra; Fairfield v. Rural Independent School District, supra; Hughes County v. Livingston, supra,* and in many other decisions of that court. So that it is plainly evident that the decision of our Court of Appeals, in declaring that the recital in and the certificate to the bonds in suit did not estop the town

from denying that the ordinance giving the officers power to issue them had been published as required by law, rests upon the decision in a case which has been over-ruled and denied, not only by the Supreme Court of the United States, but by the very court itself which origin-ally promulgated that decision. It is therefore manifest that unless our Court of Appeals decisions can be up-held upon some independent reasoning therein con-tained, it must of necessity be overruled, and the judg-ment resting on it be reversed. We have examined with the utmost care and consideration that opinion and find no reason assigned therein to support the conclusion on this point independent of the decision in the *Granada* case. It is impossible to sustain that decision without disregarding the settled rule of the federal courts, as expressed in the many well-considered opinions of both the Supreme Court of the United States, and the Cir-cuit Court of Appeals of this and other circuits.

The recent opinion of the Circuit Court of Appeals hereinbefore referred to is so broad and comprehensive, and so clearly sets forth the principles upon which the town is estopped to deny the validity of the ordinance under which the bonds were issued, that we largely con-tent ourselves by quoting therefrom some of the funda-mental propositions therein laid down, upon which the doctrine of estoppel against the town, in this class of cases, rests. At page 104 of the opinion this is said:

"A municipality or a quasi municipality may not, by the recitals or certificates in its bonds, estop itself from denying that it is without power to issue them when the laws are such that there can be no state of facts or of circumstances under which it would have authority to emit them. But, if the laws are such that there might under any state of facts or of circumstances be lawful power in the municipality or quasi municipality to issue its bonds, it may, by recitals therein, estop itself from denying that those facts or circumstances exist and that it has lawful power to send them forth, unless the constitution or act under which the bonds are is-

sued prescribes some public record as the test, and no such test was prescribed in this case, of the existence of some of those facts or circumstances.— *Chaffee County v. Potter,* 142 U. S. 355, 364, 12 Sup. Ct. 216, 35 L. Ed. 1040; *City of Evansville v. Dennett,* 161 U. S. 434, 441, 443, 446, 16 Sup. Ct. 613, 40 L. Ed. 760; *Stanly County v. Coler,* 190 U. S. 437, 23 Sup. Ct. 811, 47 L. Ed. 1126; *Waite v. Santa Cruz,* 184 U. S. 302, 320, 22 Sup. Ct. 327, 46 L. Ed. 552; *Quinlan v. Green County,* 205 U. S. 410, 419, 27 Sup. Ct. 505, 51 L. Ed. 860; *Presidio County v. Noel-Young Bond Co.,* 212 U. S. 58, 65, 67, 69, 70, 29 Sup. Ct. 237, 53 L. Ed. 402; *Board of Com'rs v. Sutliff,* 97 Fed. 270, 277, 38 C. C. A. 167, 173; *National Life Ins. Co. v. Board of Education,* 62 Fed. 778, 789, 792, 10 C. C. A. 637, 648, 651; *City of Huron v. Second Ward Savings Bank,* 86 Fed. 272, 279, 30 C. C. A. 38, 45, 49 L. R. A. 534; *Wesson v. Saline County,* 73 Fed. 917, 919, 20 C. C. A. 227; *City of South St. Paul v. Lampbrecht Bros. Co.,* 88 Fed. 449, 453, 31 C. C. A. 585, 589; *Board of Com'rs of Haskell County v. National Life Ins. Co.,* 90 Fed. 228, 231, 32 C. C. A. 591, 594; *Hughes County v. Livingston,* 104 Fed. 306, 311, 43 C. C. A. 541, 546; *Independent School District v. Rew,* 111 Fed. 1, 7, 49 C. C. A. 198, 204, 55 L. R. A. 364; *Fairfield v. Rural Independent School District,* 116 Fed. 838, 840, 841, 54 C. C. A. 342, 344, 345. If the town had published the ordinance under which the bonds were sent forth, it would have had ample authority to issue them and to make the recital and certificate they contain. There might therefore have been a state of facts under which it would have had authority to issue the bonds and to make the recital and certificate they contain, and it was within the power of the town to bring that state of facts into existence. The town, therefore, had the power, by a recital or a certificate in the bonds to the effect that this state of facts existed, to estop itself from denying its existence for the purpose of defeating the bonds and the coupons which innocent purchasers had bought in reliance upon that recital or certificate.''

And again at page 106 thereof the following:

"After the decision of the Supreme Court in *Evansville v. Dennett,* and after a careful reconsideration in the light of all the authorities of the question decided in *National Bank of Commerce v. Town of Granada,* 54 Fed. 100, 4 C. C. A. 212; *Hinkley v. City of Arkansas City,* 69 Fed. 768, 773, 16 C. C. A. 395, and *Post v. Pulaski County,* 49 Fed. 628, 1 C. C. A. 405, this court, as early as 1898, overruled its decision in those cases, followed the decision of the Supreme Court, and declared the law upon this subject to be this: The recital in municipal bonds that they were issued in accordance with the provisions of the enabling statute, imports that they were sent forth in pursuance of a lawful and proper resolution or ordinance and of just and proper action by the governing board of the municipality. It relieves the innocent purchaser of all inquiry, notice, or knowledge of the record, action, or omission of the municipal board or council or of the other officers of the municipality and estops the municipality from denying that a lawful resolution or ordinance was passed and proper action was taken.—*Board of Com'rs v. National Life Ins. Co.,* 90 Fed. 228, 231, 32 C. C. A. 591, 594. In the year 1900 in *Hughes County v. Livingston,* 104, Fed. 306, 316, 43 C. C. A. 541, this court declared that this proposition had been repeatedly affirmed and that it was no longer open to debate, citing *National Life Ins. Co. v. Board of Education,* 62 Fed. 778, 792, 10 C. C. A. 637, 651; *Rathbone v. Board of Com'rs,* 83 Fed. 125, 131, 27 C. C. A. 477, 483; *City of South St. Paul v. Lampbrecht Bros. Co.,* 88 Fed. 449, 453, 31 C. C. A. 585, 589; *Board of Com'rs v. Heed,* 101 Fed. 768, 41 C. C. A. 668; *Wesson v. Saline County,* 73 Fed. 917, 919, 20 C. C. A. 227, 229. Since the decision in *Hughes County v. Livingston,* the proposition has been reaffirmed by this court in *Independent School District v. Rew,* 111 Fed. 1, 7, 49 C. C. A. 198, 204, 55 L. R. A. 364, and in *Fairfield v. Rural Independent School District,* 116 Fed. 838, 840, 841, 54 C. C. A. 342, 344, 345."

And further, beginning at page 107, the court said:

"The second argument against the estoppel is: The mayor, treasurer, and recorder, the officers who issued the bonds, derived their power to issue them and to make the recital and certificate therein from the ordinance. The ordinance did not take effect or have force until it was published, and it never was published. Therefore these officers never had any power to issue the bonds or to make the recital and certificate they contain, and they are all ineffective. But the ordinance by its express terms granted the power and imposed the duty on these officers to issue the bonds. They could not lawfully issue them without the publication of the ordinance. The only condition precedent to the vesting of their power to send forth the bonds was the publication of this ordinance, and by the statutes and by the direction of the board of trustees contained in the ordinance to issue the bonds they were empowered and directed to publish it. The statutes provided that the ordinance should not take effect until the expiration of five days after its publication; that as soon as possible after its passage it should be recorded in the book of ordinances and be authenticated by the signatures of the mayor and the clerk; and that this record of it in the book of ordinances should be *prima facie* evidence of its publication. It was therefore within the power and it was the duty of the officers who signed and issued these bonds to publish the ordinance. It was within their power and it was their duty to ascertain and decide before they authenticated the record of the ordinance by their signatures, and before they issued the bonds that the ordinance had been lawfully published, and the case falls within these indisputable rules of law:

"The recitals in municipal bonds by the officers or the representative body invested with power to perform a precedent condition and with authority to determine when that condition has been performed, that all the requirements of law necessary to authorize the issue of the bonds have been complied

with, precludes inquiry, as against an innocent purchaser for value, whether or not the precedent condition had been performed before the bonds were issued.—*Platt v. Hitchcock County,* 139 Fed. 929, 933, 71 C. C. A. 649; *Clapp v. Otoe County,* 104 Fed. 473, 481, 45 C. C. A. 579, 587; *City of Huron v. Second Ward Sav. Bank,* 86 Fed. 272, 279, 30 C. C. A. 38, 45, 49 L. R. A. 534; *National Life Ins. Co. v. Board of Education,* 62 Fed. 778, 792, 793, 10 C. C. A. 639, 651, 652; *School District v. Stone,* 106 U. S. 183, 187, 1 Sup. Ct. 84, 27 L. Ed. 90; *Town of Coloma v. Eaves,* 92 U. S. 484, 23 L. Ed. 579; *Commissioners v. Beal,* 113 U. S. 227, 5 Sup. Ct. 433, 28 L. Ed. 966; *City of Cairo v. Zane,* 149 U. S. 122, 13 Sup. Ct. 803, 37 L. Ed. 673.

"Where, by legislative enactment, authority has been given to the officers of a municipality to issue its bonds on some precedent condition, and where the fact may be gathered from the enactment that those officers were invested with power to decide whether or not that condition had been complied with, their recital in the bonds issued by them that it was fulfilled is duly authorized, and it estops the municipality or quasi municipality from proving its falsity to defeat the bonds in the hands of an innocent purchaser.—*Quinlan v. Green County,* 205 U. S. 410, 419, 27 Sup. Ct. 505, 51 L. Ed. 860; *Presidio County v. Noel-Young Bond Co.,* 212 U. S. 58, 65, 29 Sup. Ct. 237, 53 L. Ed. 402; *Stanly County v. Coler,* 190 U. S. 437, 451, 23 Sup. Ct. 811, 47 L. Ed. 1126; *Tulare Irrigation District v. Shepard,* 185 U. S. 1, 23, 22 Sup. Ct. 531, 46 L. Ed. 773. A municipality, a quasi municipality, or a corporation and its officers, who by the apparent legality of their obligations or by recitals of their validity have induced innocent purchasers to invest in them are estopped from denying their legality on the ground that in some of the preliminary proceedings which led to their execution, or in their execution itself, they failed to comply with some law or rule of action relative to the mere time or manner of their procedure, with which they might have lawfully complied, but which they carelessly disregarded.—

*Speer v. Board of Commissioners,* 88 Fed. 749, 758, 32 C. C. A. 101, 111; *Clapp v. Otoe County,* 104 Fed. 473, 481, 45 C. C. A. 579, 587; *Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co.,* 51 Fed. 309, 326, 328, 2 C. C. A. 174, 239, 241; *Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America,* 82 Fed. 124, 137, 27 C. C. A. 73, 86; *Board of Commissioners v. Sherwood,* 64 Fed. 103, 108, 11 C. C. A. 507, 510; *City of Huron v. Second Ward Sav. Bank,* 86 Fed. 272, 30 C. C. A. 38, 49 L. R. A. 534.''

It is obvious from the foregoing that every contention urged in support of the legal right of the town to repudiate its obligation on these bonds has been swept aside by the authority of the United States Supreme Court, and subordinate federal tribunals. It is the policy of this court, declared again and again, in the absence, as in this case, of constitutional or statutory inhibition, or contrary holding of its own, to follow the decisions of the federal Supreme Court, and it therefore becomes not only a duty, but our pleasure to now do so. We are not only thus bound by the rule referred to, but we are in full accord in principle with the reasonings and conclusions of the federal decisions in this class of cases. It would be contrary to sound business principles and common honesty to permit municipal or quasi municipal corporations to put out bonds in the names of its general officers, attested by the corporate seal, with formal recital and certificate that they were issued for a known lawful purpose after full compliance with statutory authority and all precedent conditions, to then allow a repudiation and denial of them in the hands of innocent purchasers for value. It is therefore with satisfaction that this court finds itself in position, upon the highest judicial authority of the land, to declare itself opposed to such a policy, as unwise as it is unjust, and one which if persistently pursued could finally end only in general disaster. The question determined is not whether failure to publish the ordinance invalidated the bonds, but rather that the town will not be permitted to

interpose that defense under the circumstances of this case, however meritorious it might be under conditions where it could properly be urged. A contrary holding would, in effect, nullify the doctrine of *bona fide* holder for value before maturity, which is as applicable to municipal bonds, where the right to issue them exists, as to negotiable instruments generally. This court so held in *City of Cripple Creek v. Adams,* 36 Colo. 320, 85 Pac. 184. That opinion also supports the general principles here announced and is express authority, in harmony with the decisions generally, that bonds of the character of those in suit, in the hands of innocent purchasers for value, are not subject to equities. In that case the court spoke as follows:

"The Town of Cripple Creek authorized the issuance of these bonds, stated the consideration upon which they were to be issued—that is, in payment of water rights—and stated how the bonds should be authenticated—in other words, by the ordinance pursuant to which the bonds were issued, The Town of Cripple Creek authorized the issuance of the bonds, and left to the board of trustees to determine the existence and sufficiency of the consideration for which the bonds should issue. It further told the public, by this ordinance, when it could put faith in the bonds—that is, when they should be authenticated by the signature of the mayor, clerk and treasurer. The bonds, when issued, were an unconditional promise to pay a certain sum of money at a definite time. The coupons attached thereto were of like effect. The city had the power to issue them. Before the maturity of the bonds, or coupons, they were purchased by plaintiff for a valuable consideration, and without notice or knowledge of the infirmity therein.

"Municipal bonds are clothed with all the attributes of negotiable or commercial paper, pass by delivery or endorsement, and are not subject to equities (where the power to issue them exists) in the hands of holder for value, before due, without notice.—*Dillon's Municipal Corporations,* vol. 1, (3d ed.), § 486.

" 'Such securities are made to raise money by their sale, and this object would be defeated if they were subject to equities (where the power to issue exists) in the hands of *bona fide* holders.'—*Id.*, and authorities there cited.

"This was a sufficient reason for precluding the defense of a failure of consideration as against the bonds. A further reason is the recital of facts in the bonds. The recital in the bonds that they have been issued for a valuable consideration was purely as to a matter of fact, and the recital, 'And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issue of this bond to render the same lawful and valid have been properly done, happened and performed in regular and due time, form and manner as provided by law,' when applied to the matter of consideration for the bonds, was purely as to a matter of fact, and such recital as to such matter of fact is nowhere contradicted by a public record with notice of which the public is charged.—*Chaffee County v. Potter,* 142 U. S. 355 [35 L. Ed. 1040, 12 Sup. Ct. 216].' "

It is therefore apparent that our Court of Appeals was fatally in error when it declared that the town was not estopped by the recital in and the certificate to the bonds, because a precedent condition to their issuance had not been complied with. It would be a strange situation if the town, and its general officers, having full power and authority to comply with precedent conditions, and to determine and declare when that had been done, could issue bonds of apparent legality, with recital and certificate of full compliance with all preliminary requirements, dispose of them to *bona fide* purchasers for value, and then defeat the bonds thus held, by declaring that the things which they could have done, and which it was their duty to do, in order to make the bonds valid, had in fact been totally disregarded. Such a doctrine is not only inequitable, but positively immoral. It would place a premium on misrepresentation and deceit, and at the same time cast a cloud upon securities of

this class, rendering a sale of them most difficult, which if accomplished at all, could be done only upon terms most favorable to the purchaser.

The decisions of practically all of the state courts, where like questions have been under consideration, are in harmony with the conclusions here reached. Indeed our attention has been called to decisions in but one, the State of Texas, which in any sense can be fairly said to conflict with our views.

The result is that the judgment of the Court of Appeals must be reversed, the cause remanded to it, with directions to affirm the judgment of the district court, and it is so ordered.

*Judgment reversed.*

Decision *en banc.*

Mr. JUSTICE HILL concurs in the conclusion.

Mr. JUSTICE SCOTT dissents.

CHIEF JUSTICE MUSSER not participating.

JUSTICE SCOTT: I dissent. I am firmly convinced of the soundness, justice and righteousness of the opinion of the state Court of Appeals in this case, 23 Colo. App. 1, and which I make my dissenting opinion herein. It is the first time in the history of this court when it has elected to follow a decision of the Federal Court of Appeals as against the decision of our own Court of Appeals.

The opinion followed by the majority of the court, is in direct conflict with the repeated decisions of the Supreme Court of the United States, covering a period of a hundred years, and it is without precedent in that court.

It is as unsound as it is unrighteous. In the matter considered, it denies all protection of the law to or-

ganized society, and imposes no duty on investing capital. It makes the tax-paying public defenseless as against the power of public plunder and the fraud of their public officers. The decision followed in this case, is to my mind, the most conspicuous court decision in existence, in the recognition of the rights of dollars as against the rights of man. The principle upon which the decision rests, is one more fitting to have been declared in a darker age, and under a feudal system of government, rather than in this enlightened day, under a government proclaiming universal liberty and equality before the law.